UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

CA, INC., COMPUTER ASSOCIATES
THINK, INC., PLATINUM TECHNOLOGY    :
INTERNATIONAL, INC. and PLATINUM          Civil Action No.
TECHNOLOGY IP, INC.                                      :    07-CV-1476 (ADS) (MLO)

           Plaintiffs,                 :

         v.                                  :

ROCKET SOFTWARE, INC.                           :

           Defendant.                :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


**DEFENDANT ROCKET SOFTWARE, INC.'S MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION TO DISMISS THE AMENDED COMPLAINT**


                                Thomas J. Dougherty
                                Justin J. Daniels
                                P. Anthony Sammi
                                SKADDEN, ARPS, SLATE,
                                  MEAGHER & FLOM LLP
                                Four Times Square
                                New York, New York 10036
                                (212) 735-3000

                                -- and --

                                One Beacon Street
                                Boston, Massachusetts 02108
                                (617) 573-4800

                                Counsel for Defendant
Dated:  November 14, 2007            Rocket Software, Inc.

## TABLE OF CONTENTS

TABLE OF AUTHORITIES.................................................................................iii

PRELIMINARY STATEMENT ...................................................................... 1

CA'S ALLEGED FACTS ................................................................................ 2

2000-2001:  CA First Suspects The Alleged Misappropriation ..................................... 3

2001:  CA Contacts Rocket About The Alleged Misappropriation, And Rocket Responds ......... 3

2004:  CA Again Contacts Rocket About The Alleged Misappropriation, And Rocket
Responds.................................................................................................. 4

2007:  CA Sues Rocket Regarding The Alleged Misappropriation ................................. 5

ARGUMENT ................................................................................................. 5

I.      COUNT I:  CA'S COPYRIGHT INFRINGEMENT CLAIM SHOULD BE
        DISMISSED ....................................................................................... 5

        A.      All Alleged Acts Of Copyright Infringement Occurring Before April 9,
                2004 Are Time-Barred By The Three Year Statute Of Limitations...................... 5

        B.      CA Cannot Assert That The Statute Of Limitations Is Equitably Tolled ............... 7

        C.      CA Cannot Recover Statutory Damages Or Attorneys' Fees Under The
                Copyright Act As A Matter Of Law ..................................................... 9

II.     COUNT II:  CA'S MISAPPROPRIATION OF  TRADE SECRETS CLAIM
        SHOULD BE DISMISSED AS TIME-BARRED ......................................... 10

III.    COUNT III:  CA'S ILLINOIS CONSUMER FRAUD ACT/UNFAIR
        COMPETITION CLAIM SHOULD BE DISMISSED.................................... 11

        A.      The Claim Is Time-Barred ............................................................. 11

        B.      As Rocket's Corporate Competitors, Plaintiffs Cannot Invoke the
                Protections of the Illinois Consumer Fraud Act ...................................... 12

        C.      The Claim Is Preempted By The Copyright Act ....................................... 15

IV.     COUNT IV:  CA'S CONVERSION CLAIM SHOULD BE DISMISSED.................... 16

        A.      The Claim Is Time-Barred .............................................................. 16

B.    The Amended Complaint Fails To Allege That Rocket Denied CA Access To Its Source Code ............................................................................... 17

C.    The Claim Is Preempted By The Copyright Act .................................... 17

V.    COUNT V:  CA'S TRESPASS TO CHATTELS CLAIM SHOULD BE DISMISSED ............................................................................................... 18

A.    The Claim Is Time-Barred .................................................................... 18

B.    The Allegations Of The Amended Complaint Are Insufficient To Support A Trespass To Chattels Claim ............................................................... 19

C.    The Claim is Preempted by the Copyright Act ..................................... 20

VI.   COUNT VI:  CA'S INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE CLAIM SHOULD BE DISMISSED .............................. 21

A.    The Claim Is Time-Barred .................................................................... 21

B.    The Amended Complaint Fails To Allege The Specific Business Relationships As Required ..................................................................... 22

VII.  COUNT VII:  CA'S UNJUST ENRICHMENT CLAIM SHOULD BE DISMISSED ............................................................................................... 23

A.    The Claim Is Time-Barred .................................................................... 23

B.    The Claim Is Preempted By The Copyright Act .................................... 24

CONCLUSION ............................................................................................................. 25

## TABLE OF AUTHORITIES

**CASES**                                                                    **PAGE(S)**

Adler v. William Blair & Co.,
    648 N.E.2d 226 (Ill. App. 1 Dist. 1995) .................................................................. 12

Athey Prods. Corp. v. Harris Bank Roselle,
    89 F.3d 430 (7th Cir. 1996) ................................................................................... 13

Auscape Int'l v. Nat'l Geographic Soc'y,
    409 F. Supp. 2d 235 (S.D.N.Y. 2004) ...................................................................... 5

Barksdale v. Robinson,
    211 F.R.D. 240 (S.D.N.Y. 2002) ............................................................................. 8

Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.,
    373 F.3d 296 (2d Cir. 2004) ................................................................15, 16, 21, 25

Brown v. Bethlehem Terrace Assocs.,
    136 A.D.2d 222 (3d Dep't 1998) ...................................................................... 22, 23

Burgos v. Greiner,
    Civ. No. 98-5855, 1999 WL 551229 (E.D.N.Y. June 21, 1999) ....................................7

Byron v. Chevrolet Motor Div. of G.M. Corp.,
    Civ. No. 93-1116, 1995 WL 465130 (S.D.N.Y. Aug. 7, 1995)...................................... 6

Calcutti v. SBU, Inc.,
    224 F. Supp. 2d 691 (S.D.N.Y. 2002) ...................................................................... 17

Continental X-Ray Corp. v. XRE Corp.,
    Civ. No. 93-3522, 1995 WL 599064 (N.D. Ill. Oct. 2, 1995) ................................. 14, 15

Cranesville Block Co., Inc. v. Niagara Mohawk Power Corp.,
    175 A.D.2d 444 (3d Dep't 1991) .............................................................................. 19

Credit Ins. Consultants, Inc. v. Gerling Global Reinsurance Corp. of Am.,
    210 F. Supp. 2d 980 (N.D. Ill. 2002)................................................................... 13, 15

Croton Watch Co., Inc. v. National Jeweler Magazine, Inc.,
    Civ. No. 06-662, 2006 WL 2254818 (S.D.N.Y. Aug. 7, 2006)...................................... 22

CTS Corp. v. Raytheon Co.,
    Civ. No. 92-3878, 1993 WL 157464 (N.D. Ill. May 12, 1993) ..................................... 13

EZ-TIXZ, Inc. v. HIT-TIX, Inc.,
 919 F. Supp. 728 (S.D.N.Y. 1996) ............................................................................ 9, 10

Elliott v. Qwest Commc'ns. Corp.,
 808 N.Y.S.2d 443 (3d Dep't 2006) ................................................................................. 23

Fuel Digital, Inc. v. Corinella,
 Civ. No. 602497/06, 2006 WL 4476202 (N.Y. Sup. Ct. Oct. 24, 2006) ................... 22, 23

Gen. Elec. Capital Auto. Fin. Services, Inc. v. Phil Smith Chrysler Plymouth Jeep Eagle,
 Civ. No. 00-762, 2001 WL 1223537 (N.D. Ill. Oct. 11, 2001) ..................................... 13

Healthcare Advocates, Inc. v. Harding, Earley, Follmer & Frailey,
 497 F. Supp. 2d 627 (E.D. Pa. 2007) ........................................................................ 20, 21

Highsmith v. Chrysler Credit Corp.,
 18 F.3d 434 (7th Cir. 1994) ........................................................................................... 12

Hoey v. Dexel System Corp.,
 716 F. Supp. 222 (E.D. Va. 1989) ................................................................................. 6, 7

In re Jet Blue Airways Corp. Privacy Litig.,
 379 F. Supp. 2d 299 (E.D.N.Y. 2005) ....................................................................... 19, 20

In re Merrill Lynch P'ship. Litig.,
 154 F.3d 56 (2d Cir. 1998) ............................................................................................... 7

In re Tamoxifen Citrate Antitrust Litig.,
 466 F.3d 187 (2d Cir. 2005) .............................................................................................. 5

Iqbal v. Hasty,
 490 F.3d 143 (2d Cir. 2007) .............................................................................................. 5

Ivanhoe Fin. Inc. v. Highland Banc Corp.,
 Civ. No. 03-7336, 2004 WL 2091997 (N.D. Ill. Sept. 15, 2004) ............................. 14, 15

Johnson v. Jones,
 149 F.3d 494 (6th Cir. 1998) ............................................................................................. 9

Johnson v. Nyack Hosp.,
 891 F. Supp. 155 (S.D.N.Y. 1995) ................................................................................... 21

Logicom Inclusive, Inc. v. W.P. Stewart & Co.,
 Civ. No. 04-0604, 2004 WL 1781009 (S.D.N.Y. Aug. 10, 2004) ...................... 18, 24, 25

Malmsteen v. Berdon, LLP,
    477 F. Supp. 2d 655 (S.D.N.Y. 2007) ..................................................................... 23, 24

Natkin v. Winfrey,
    111 F. Supp. 2d 1003 (N.D. Ill. 2000) ........................................................................ 16

Oliveira v. Amoco Oil Co.,
    726 N.E.2d 51 (Ill. App. 4 Dist. 2000) ....................................................................... 12

Orange County Choppers, Inc. v. Olaes Enter., Inc.,
    Civ. No. 06-7211, 2007 WL 2161777 (S.D.N.Y. July 27, 2007) ................................... 24

Pocohontas Supreme Coal Co. v. Bethlehem Steel Corp.,
    828 F.2d 211 (4th Cir. 1987) ........................................................................................ 7

Prather v. Neva Paperback, Inc.,
    446 F.2d 338 (5th Cir. 1971) ........................................................................................ 7

Research Res., Inc. v. Dawn Food Prods., Inc.,
    Civ. No. 01-1906, 2001 WL 1223556 (N.D. Ill. Oct. 11, 2001) .................................... 11

Rohlfing v. Manor Care, Inc.,
    172 F.R.D. 330 (N.D. Ill. 1997) ................................................................................... 12

Rosner v. Codata Corp.,
    917 F. Supp. 1009 (S.D.N.Y. 1996) ........................................................................... 6, 7

Stone v. Williams,
    970 F.2d 1043 (2d Cir. 1992) .............................................................................. passim

Swartz v. Schaub,
    818 F. Supp. 1214 (N.D. Ill. 1993) .............................................................................. 12

Troll Co. v. Uneeda Doll Co.,
    483 F.3d 150 (2d Cir. 2007) ..................................................................................... 9, 10

Trustforte  Corp. v. Eisen,
    Civ. No. 600521/2005, 2005 WL 3501587
    (N.Y. Sup. Ct. Nov. 15, 2005) ............................................................................... 16, 17

**STATUTES**                                                      **PAGE(S)**

17 U.S.C. § 102 ........................................................................................................ 15

17 U.S.C. § 103 ........................................................................................................ 15

17 U.S.C. § 301(a) .................................................................................................... 15

17 U.S.C. § 412(2) ...................................................................................................... 9

17 U.S.C. § 507(b) ...................................................................................................... 5

815 I.L.C.S. § 505 <u>et seq.</u> ................................................................................. passim

765 I.L.C.S. § 1065 <u>et seq.</u> ................................................................................ 10

N.Y. C.P.L.R. § 214 ............................................................................................. passim

## PRELIMINARY STATEMENT

This litigation concerns conduct that allegedly occurred <u>more than seven years ago</u>, and which has been known for nearly as long by plaintiffs CA, Inc., Computer Associates Think, Inc., Platinum Technology International, Inc. ("Platinum") and Platinum Technology IP, Inc. (collectively, "CA").  CA alleges in its Amended Complaint ("Am. Compl." (Docket No. 3)) that "[i]n or around the <u>beginning of 2000,</u>" several former CA software developers purportedly misappropriated CA source code and proprietary information from a company, Platinum, that CA subsequently acquired, and alleges that after those software developers joined defendant Rocket Software, Inc. ("Rocket"), they incorporated some CA source code into Rocket software products and services and used other CA proprietary information -- with Rocket's supposed "knowledge, approval and encouragement."

Not only do these claims lack any merit, but CA also did not file suit until earlier this year, even though it indisputably could have done so years ago.  The Amended Complaint alleges that, <u>inter alia</u>:

- As a result of Rocket's launch of several DB2 tools, by mid- to late- <u>2001</u> CA "began to suspect that Rocket may have illegally used [CA's] copyrighted source code and misappropriated [CA's] trade secrets because Rocket had launched [six DB2] products so fast and they bore a remarkable resemblance to CA's DB2 Products."  (<u>Id.</u> ¶ 41.)

- "In or about <u>2001</u>" two CA customers contacted CA about a software problem that occurred when the customers ran CA's product and Rocket's product simultaneously.  (<u>Id.</u> ¶ 43 (emphasis added).)  CA's analysis at that time "suggested to CA that Rocket used [the CA program] source code as a model, template and inspiration for [the Rocket program]."  (<u>Id.</u>)

- "[I]n July of <u>2001</u>, CA wrote a letter to Rocket [regarding] . . . the possibility that one or more of its developers, including the former Platinum engineers, used CA's source code."  (<u>Id.</u> ¶ 44 (emphasis added).)

These allegations demonstrate that CA has known about such conduct since 2001 at the latest, which is dispositive of most of CA's purported claims. (<u>See</u> <u>infra</u> Sections I-VII.)

Beyond this significant statute of limitations hurdle, CA's claims are subject to dismissal for (at least) the following additional reasons:

 1. CA has failed to adequately plead the essential elements of its purported unfair competition, conversion, trespass to chattels and intentional interference with prospective economic advantage claims.

 2. The federal Copyright Act preempts -- and thus bars as a matter of law -- CA's purported unfair competition, conversion, trespass to chattels and unjust enrichment/restitution claims.

 3. CA's demand for statutory damages and attorneys' fees under the Copyright Act is foreclosed as a matter of law by CA's failure to register those copyrights prior to the first alleged act of infringement.  In fact, CA did not file its federal copyright applications until <u>after</u> it filed this lawsuit against Rocket.

 In sum, CA's belated filing of this action and the multiple pleading deficiencies in the Amended Complaint necessitate dismissal of its claims as a mater of law.

## CA'S ALLEGED FACTS

 For the purposes of this motion, Rocket assumes the truth of, but does not admit, the Amended Complaint's well-pleaded allegations.

 Rocket is a Massachusetts-based global development firm organized under the laws of Delaware that manufactures enterprise infrastructure products for the world's leading OEMs, networks and software companies.  (<u>See</u> Am. Compl. ¶¶ 10, 11.)  Plaintiffs CA, Inc., Computer Associates Think, Inc., Platinum Technology International, Inc. and Platinum Technology IP, Inc. are Delaware corporations with principal places of business in New York. (<u>Id.</u> ¶¶ 5-8.)  In June 1999, CA acquired Platinum.  (<u>Id.</u> ¶ 19.)  Both Rocket and CA develop

software products for use on IBM's "DB2" database administration platform, which is the principal database for mainframe computer systems.  (Id. ¶ 15.)

### 2000-2001:  CA First Suspects The Alleged Misappropriation

In or around the beginning of 2000, four Platinum software developers, Mark Pompeii, Robert Schulien, Michael Skopec and David Rowe (collectively, the "Rocket Developers"), left Platinum to work for Rocket.  (Id. ¶ 34.)  According to the Amended Complaint, the Rocket Developers had access to the source code for several Platinum DB2 technologies, and -- before leaving CA in 2000 -- Pompeii allegedly "threatened to copy CA's entire source code library and development environment for its DB2 products."  (Id. ¶ 36.)

As a result of Rocket's launch of several DB2 tools by mid- to late- 2001, CA "began to suspect that Rocket may have illegally used its copyrighted source code and misappropriated its trade secrets because Rocket had launched [six DB2] products so fast and they bore a remarkable resemblance to CA's DB2 Products."  (See id. ¶ 41 (emphasis added).)  Moreover, in 2001, some of CA's customers were allegedly "struck by the similarities of Rocket's and CA's DB2 products."  (Id. ¶¶ 42-44.)  In actuality, Rocket invested significant resources developing its DB2 products independently, but that is not directly at issue on this motion.

### 2001:  CA Contacts Rocket About The
### Alleged Misappropriation, And Rocket Responds

In July 2001, CA wrote a formal letter to Rocket that "asked Rocket to investigate the possibility that one or more of its developers, including the [Rocket Developers], used CA's source code."  (Id. ¶ 44.)  Rocket did investigate, and concluded that Rocket and the Rocket Developers had not used CA's source code or other proprietary information.  (Id. ¶ 45; Ex. B at 3.)

Rocket's written response to CA in August 2001 denied any wrongdoing.  (See id. Ex. A.)  Specifically, Rocket concluded that (i) no Rocket employee, including the Rocket Developers, "familiar with [a CA DB2 product] development at CA was involved in the development of [a Rocket DB2 product]"; (ii) "[n]o one involved in the development of [a Rocket DB2 product] has written, downloaded, or even examined [a CA DB2 product] code, or the code of any other CA product"; and (iii) "no CA code has been retained by any Rocket Developer after leaving Computer Associates or Platinum, and no CA code has been used in the development of any Rocket product." (Id. Ex. A at 2-3.)

Rocket then represented -- and now steadfastly maintains -- that its software products are the result of independent development and do not incorporate any CA intellectual property.  (See Am. Compl. ¶ 45.)  Upon receipt of Rocket's response, CA admittedly "did not pursue the matter" and took no further action in 2001, 2002 or 2003.  (See id. ¶ 45.)

**2004:  CA Again Contacts Rocket About The
Alleged Misappropriation, And Rocket Responds**

Approximately three years after its July 2001 letter, CA contacted Rocket again about the same alleged misappropriation of CA source code.  (Id. ¶ 47.)  In April 2004, CA claimed that an undated, anonymous letter, "apparently from a Rocket employee," again supposedly alerted CA to the possibility that the Rocket Developers allegedly misappropriated CA source code.  (See id. ¶ 46 & Ex. B.)  This time, CA went so far as to hire outside counsel to notify Rocket of its perceived misappropriation of CA's source code and other proprietary information.  (Id. ¶ 47.)  In an effort to put CA's renewed suspicions at rest, Rocket was willing to submit its source code to a neutral third party for review.  After protracted discussions between CA and Rocket in 2004, however, CA would not agree to the proposed terms, and the inspection never occurred.  (Id.)  CA took no further action in 2004, 2005 and 2006.

4

**2007:  CA Sues Rocket Regarding The Alleged Misappropriation**

After another three years of silence, CA sued Rocket in 2007, bringing allegations that are, in sum and substance, identical to the allegations CA leveled at Rocket in 2001 and then again in 2004.

**ARGUMENT**

In passing on a motion to dismiss, although the Court should accept as true all factual statements alleged in the Amended Complaint and draw any reasonable inferences in CA's favor.  However, "bald assertions and conclusions of law are not adequate [to state a claim] and a complaint consisting only of naked assertions, and setting forth no facts upon which a court could find a violation of the [law], fails to state a claim under Rule 12(b)(6)."  In re Tamoxifen Citrate Antitrust Litig., 466 F.3d 187, 201 (2d Cir. 2005) (citations and internal quotations omitted).  The Court should apply a "flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible."  Iqbal v. Hasty, 490 F.3d 143, 157-58 (2d Cir. 2007).  Under this standard, CA's claims should be dismissed as matter of law.

**I.     COUNT I:  CA'S COPYRIGHT
         INFRINGEMENT CLAIM SHOULD BE DISMISSED**

**A.     All Alleged Acts Of Copyright Infringement Occurring Before April 9,
         2004 Are Time-Barred By The Three Year Statute Of Limitations**

A plaintiff's claim for copyright infringement accrues on the date of infringement, Auscape Int'l v. Nat'l Geographic Soc'y, 409 F. Supp. 2d 235 (S.D.N.Y. 2004), and the statute of limitations is three years.  17 U.S.C. § 507(b); Stone v. Williams, 970 F.2d 1043, 1048 (2d Cir. 1992).  While each act of infringement may give rise to an independent claim for relief, "[t]his does not mean that when infringements occur during the limitations period recovery may be had for past infringements.  Recovery is allowed only for those acts occurring within three years of

suit and is disallowed for earlier infringing acts." Stone, 970 F.2d at 1049-50.  The Second

Circuit in Stone thereby rejected the "continuous wrong" doctrine, which allows a plaintiff to

recover for infringements occurring prior to the three-year limitations period if there was a

continuous pattern of violations ending within the three-year period.  Id. at 1049-50; see also

Byron v. Chevrolet Motor Div. of G.M. Corp., Civ. No. 93-1116, 1995 WL 465130 (S.D.N.Y.

Aug. 7, 1995).  For example, in Hoey v. Dexel Sys. Corp., 716 F. Supp. 222, 223-24 (E.D. Va.

1989), the defendant promoted and sold a software program "substantially similar" to the

plaintiff's copyrighted software program, which the defendant had previously licensed.  Id. at

223.  The district court rejected the plaintiff's argument that he could "reach back" and sue for

all alleged acts of copyright infringement so long as one act of infringement occurred within the

limitations period, noting that the Copyright Act is "clear on its face" to exclude continuing

copyright infringements that accrued more than three years before the filing of the suit.  Id. at

223-24.

       Similarly, in Rosner v. Codata Corp., 917 F. Supp. 1009 (S.D.N.Y. 1996), the

plaintiff brought several copyright and state-law tort claims alleging that the defendants

improperly copied a computer program used for fire monitoring and control in New York City

buildings.  Id. at 1011–12.  Although the alleged copying of the computer programs occurred in

1973 and 1974, the plaintiff contended in a complaint filed in April 1991 that at least two of the

defendants' building sites were still using illicitly derived programming as of April 1988.  Id. at

1015.  Citing the rule established in Stone, the court rejected the copyright claims as barred by

the statute of limitations because there was no credible evidence that the defendants had

infringed any copyrights in the three years preceding April 1991.  Id. at 1018–19.

Here, too, the Court should not allow CA to "reach back" and recover for alleged infringements that occurred prior to three years before the filing of this suit.  Accordingly, all such alleged acts of copyright infringement occurring before April 9, 2004 (i.e., three years before the complaint was filed) are time-barred as a matter of law.  See Stone, 970 F.2d at 1049-50; Hoey, 716 F. Supp. at 224; Rosner, 917 F. Supp. at 1018–19.

**B.      CA Cannot Assert That The Statute Of Limitations Is Equitably Tolled**

In opposition to this motion, CA may argue that Rocket's position in 2001 and 2004 that it had committed no wrongdoing amounts to fraudulent concealment, and therefore equitably tolls the applicable statute of limitations for its copyright claim (as well as each of its other claims).  Any such argument should be rejected.

Under the doctrine of fraudulent concealment, an applicable statute of limitations will be tolled only if the plaintiffs show (1) wrongful concealment (2) preventing the plaintiffs from discovering the nature of the claim within the limitations period, and (3) due diligence in pursuing discovery of the claim.  In re Merrill Lynch Partnership Litig., 154 F.3d 56, 60 (2d Cir. 1998) (emphasis added).  Thus, courts should toll a limitations period only where a party was "prevented in some extraordinary way from exercising his rights." Burgos v. Greiner, No. 98-CV-5855, 1999 WL 551229, at *3 (E.D.N.Y. Jun. 21, 1999) (emphasis added).

Courts refuse to toll a statute of limitations once the plaintiff is on notice that a potential claim exists.  Stone, 970 F.2d at 1049 (emphasis added).  Mere "ignorance of evidence" is an insufficient basis upon which to equitably toll a statute of limitations; instead, "ignorance of a potential claim is required."  Prather v. Neva Paperback, Inc., 446 F.2d 338, 341 (5th Cir. 1971) (emphasis added).  Moreover, equitable tolling based upon fraudulent concealment cannot rest on a mere denial of wrongful conduct, or a "failure to own up to illegal conduct." Pocohontas Supreme Coal Co. v. Bethlehem Steel Corp., 828 F.2d 211, 218–19 (4th Cir. 1987).

7

When a copyright owner sends a letter to an alleged infringer, which clearly evidences knowledge of a potential claim, the statute of limitations cannot be tolled. Barksdale v. Robinson, 211 F.R.D. 240 (S.D.N.Y. 2002). In Barksdale, a copyright dispute arose between two parties, each of which claimed to be the principal author of two different musical compositions. Id. at 243. The copyright owner sent a series of letters to the alleged infringer throughout the course of 1998, identifying himself as "the sole and exclusive owner of the compositions" which the defendant had allegedly infringed, but failed to bring suit until December of 2001, after the three-year statute of limitations had expired. Id. at 244. The court held that the copyright claims were time-barred, and the statute of limitations should not be tolled absent a demonstration of "egregious wrongdoing by a defendant [that] prevents a plaintiff from bringing suit on a claim of which the plaintiff is aware." Id. at 245 (emphasis added) (internal quotations omitted).

CA was indisputably on notice of potential state law and copyright infringement claims as early as July of 2001, when it first asked Rocket to investigate whether Rocket's source code had been impermissibly derived from CA. (Am. Compl. ¶ 44.) This notice of a potential claim is all that is required; knowledge of all evidence associated with that claim is not required before the statute of limitations begins to run. See Stone, 970 F.2d at 1049. Moreover, CA admittedly "did not pursue the matter" and took no further action in 2001, 2002, or 2003 -- this lengthy inaction could hardly be characterized as the sort of "due diligence" that would warrant tolling. See id. at 45. The fact that Rocket was willing to submit its source code to a neutral third party for review (Am. Compl. ¶ 47) is evidence of exactly the opposite of "concealment" or "egregious wrongdoing." See Barksdale, 211 F.R.D. at 245.

**C.      CA Cannot Recover Statutory Damages Or
          Attorneys' Fees Under The Copyright Act As A Matter Of Law**

To further the policy of promoting the registration of copyrights, section 412(2) of
the Copyright Act limits the availability of attorneys' fees and statutory damages to only those
cases in which the copyright holder registered the copyright prior to the first act of alleged
infringement.  See Johnson v. Jones, 149 F.3d 494, 496 (6th Cir. 1998).  CA's failure to register
its copyrighted material prior to the commencement of any alleged infringement therefore
precludes the recovery of statutory damages or attorneys' fees for any period of time, even when
(as here) the infringement is alleged to be ongoing.  17 U.S.C. § 412(2); Troll Co. v. Uneeda
Doll Co., 483 F.3d 150, 158-59 (2d Cir. 2007).

In Troll Co. v. Uneeda Doll Co., for example, the Second Circuit held that "a
plaintiff may not recover statutory damages or attorney's fees for any infringement 'commenced'
before the effective date of a copyright's registration.  The courts have held, based on the
provision's text, legislative history, and purpose, that a plaintiff may not recover statutory
damages and attorney's fees for infringement occurring after registration if that infringement is
part of an ongoing series of infringing acts and the first act occurred before registration."  Id. at
158.  Similarly, in EZ-TIXZ, Inc. v. HIT-TIX, Inc., 919 F. Supp. 728, 735-36 (S.D.N.Y. 1996),
the plaintiff created a computer program for theater ticket sales, but did not register the program
with the Copyright Office until several years after the defendants allegedly began infringing the
plaintiff's copyright.  Id.  The court rejected the plaintiff's argument that "each sale of a ticket
[using the computer program] was a separate act of infringement that 'commenced' after the
registration of the copyright" and dismissed the plaintiff's attorneys' fees and statutory damages
claims as a matter of law.   Id. at 736.

9

For the same reasons, the Court here should dismiss CA's purported demands for statutory damages (Am. Compl. ¶ 58) and attorneys' fees (id. ¶ 59) in their entirety.  CA did not file its copyright registrations until, at the earliest, April 16, 2007.  (See id. Ex. C.)  CA further contends that Rocket allegedly incorporated that copyrighted material into its DB2 products at least as early as 2001.  (See, e.g., id. ¶ 41.)  CA's belated registration of its copyrights forecloses any potential award to CA of statutory damages or attorneys' fees as a matter of law.  See 17 U.S.C. § 412(2); Troll Co., 483 F.3d at 158; EZ-TIXZ, Inc., 919 F. Supp. at 735-36.

## II.   COUNT II:  CA'S MISAPPROPRIATION OF TRADE SECRETS CLAIM SHOULD BE DISMISSED AS TIME-BARRED

The Illinois Trade Secret Act, 765 I.L.C.S. § 1065/2, provides that a claim must be brought "within 5 years after the misappropriation is discovered or by the exercise of reasonable diligence should have been discovered."  765 I.L.C.S. § 1065/7.  Further, a "continuing misappropriation," as alleged in the Amended Complaint (e.g., ¶ 63), constitutes a single claim.  765 I.L.C.S. § 1065/7.

The allegations in the Amended Complaint make clear that CA's Illinois Trade Secret Act claim is barred in its entirety by this five-year limitations period.  CA expressly alleged that in 2001 it "began to suspect that Rocket may have illegally used its copyrighted source code and misappropriated its trade secrets because Rocket had launched [six DB2] products so fast and they bore a remarkable resemblance to CA's DB2 Products."  (Id. ¶ 41.)  In July 2001, CA also raised with Rocket, in writing, the very same misappropriation charges that it now brings before this Court.  (See, e.g., id. ¶ 44 ("CA wrote a letter to Rocket . . . ask[ing] Rocket to investigate the possibility that one or more of its developers . . . used CA's source code to develop Query Monitor.")

The time for any litigation was therefore six years ago, in 2001 -- not 2007.  In a similar case, Research Res., Inc. v. Dawn Food Prods., Inc., the plaintiff sued for patent infringement and a variety of state court claims, alleging that the defendants stole the plaintiff's formula for use in extending the shelf life of bread products.  No. 01-CV-1906, 2001 WL 1223556, at *1 (N.D. Ill. Oct. 11, 2001).  While the plaintiff formally notified the defendants of their alleged infringement via letter on January 17, 1996, it failed to bring suit until March 19, 2001.  Id. at *1-2.  The parties continued to communicate for some time, with the defendants contending that the formula they used to enhance the preservative qualities of their products had been independently developed.  Id.  The court therefore determined that under the applicable five-year statute of limitations, the plaintiff's claim under the Illinois Trade Secret Act for continuing sales of products containing allegedly misappropriated ingredients was barred.  Id. at *7.

Here, the allegations in the Amended Complaint demonstrate that CA discovered the alleged misappropriation giving rise to a potential Illinois Trade Secret Act claim in July 2001, at the latest.  (See id. Ex. A (referencing CA's July 26, 2001 letter to Rocket).)  In similar fashion to the plaintiff in Research Resources, it notified Rocket by letter shortly thereafter.  (Id.)  Yet, because CA did not ultimately bring suit until after the expiration of the five-year statute of limitations, its claim is time-barred.

## III.    COUNT III:  CA'S ILLINOIS CONSUMER FRAUD ACT/UNFAIR COMPETITION CLAIM SHOULD BE DISMISSED

### A.    The Claim Is Time-Barred

The Illinois Consumer Fraud and Deceptive Trade Practices Act, 815 I.L.C.S. § 505/2, (the "Illinois Consumer Fraud Act," or "ICFA") contains a three-year statute of limitations: a claim accrues "when [a] plaintiff 'knows or reasonably should know of his injury

and also knows or reasonably should know that it was wrongfully caused.'"  815 I.L.C.S. §

505/10a(e); <u>Highsmith v. Chrysler Credit Corp.</u>, 18 F.3d 434, 441 (7th Cir. 1994).  Like its other

Illinois claim, CA was well aware of the alleged wrongful conduct in July 2001, and thus its

ICFA claim accrued, at the <u>latest</u>, more than six years ago.  (<u>See</u> Am. Compl. ¶¶ 34, 35, 41.)

Accordingly, the Court should dismiss the ICFA claim in its entirety for the same reasons that it

should dismiss its Illinois Trade Secret Act claim.  (<u>See supra</u> pp. 9-11.)

      **B.**    **As Rocket's Corporate Competitors, Plaintiffs Cannot
           <u>Invoke the Protections of the Illinois Consumer Fraud Act</u>**

        **1.**      <u>**None of the Plaintiffs are Illinois Consumers**</u>

The Illinois Consumer Fraud Act is intended to protect Illinois consumers from

deceptive acts or practices.  815 I.L.C.S. 505/1(f); <u>Oliveira v. Amoco Oil Co.</u>, 726 N.E.2d 51, 60

(Ill. App. 4 Dist. 2000), <u>aff'd in relevant part</u>, 776 N.E.2d 151 (Ill. 2002).  "To state a claim

under the ICFA, plaintiffs must show: (1) that the defendants engaged in a deceptive act or

practice; (2) intent on the defendants' part <u>that the plaintiffs</u> rely on the deception; and (3) that

the deception occurred in the course of conduct involving trade or commerce."  <u>Rohlfing v.

Manor Care, Inc.</u>, 172 F.R.D. 330, 339 (N.D. Ill. 1997) (emphasis added) (citing <u>Adler v.

William Blair & Co.</u>, 648 N.E.2d 226, 233 (Ill. App. 1 Dist. 1995)).

In addition, a plaintiff must show that the defendant's actions have harmed

Illinois "consumers," <u>Swartz v. Schaub</u>, 818 F. Supp. 1214, 1214 (N.D. Ill. 1993), which are

defined as "any person who purchases or contracts for the purchase of merchandise not for resale

in the ordinary course of his trade or business but for his use or that of a member of his

household."  815 ILCS 505/1(e).

Here, of course, plaintiffs are not Rocket's consumers -- they are Rocket's

competitors.  Nor are they Illinois residents -- they are Delaware corporations, each with its

principal place of business in New York.  Indeed, the Amended Complaint contains <u>no</u> <u>allegations whatsoever</u> regarding Illinois "consumers, borrowers, and businessmen," or <u>any</u> Illinois residents at all.  This failure to allege a connection to Illinois consumers renders CA's purported Illinois Consumer Fraud Act claim deficient as a matter of law, and this fact alone is sufficient to warrant dismissal with prejudice.  <u>Gen. Elec. Capital Auto Fin. Servs., Inc. v. Phil</u> <u>Smith Chrysler Plymouth Jeep Eagle</u>, Civ. No. 00-762, 2001 WL 1223537, at *3 (N.D. Ill. Oct. 11, 2001).

### 2.   Plaintiffs Cannot Satisfy the "Consumer Nexus" Test

If, as here, a plaintiff is not a consumer, then it must plead facts sufficient to satisfy the "consumer nexus" test.  <u>Athey Prods. Corp. v. Harris Bank Roselle</u>, 89 F.3d 430, 437 (7th Cir. 1996).  This test applies "[w]here a dispute involves two businesses that are not consumers," and determines "whether the alleged conduct involves trade practices addressed to the market generally or otherwise implicates consumer protection concerns."  <u>CTS Corp. v.</u> <u>Raytheon Co.</u>, Civ. No. 92-3878, 1993 WL 157464, at *3 (N.D. Ill. May 12, 1993).  Satisfying the "consumer nexus" test is difficult, because "courts have generally required some allegations of sharp practices designed to mislead consumers about a competitor, or an implication of public health, safety or welfare issues."  <u>Credit Ins. Consultants, Inc. v. Gerling Global Reinsurance</u> <u>Corp. of Am.</u>, 210 F. Supp. 2d 980, 985–86 (N.D. Ill. 2002).

For instance, in <u>Continental X-Ray Corp. v. XRE Corp.</u>, Civ. No. 93-3522, 1995 WL 599064 (N.D. Ill. Oct. 2, 1995), the court considered, and dismissed, defendant XRE's counterclaims for, <u>inter alia</u>, violations of consumer protection laws.  Continental X-Ray Corp. was an Illinois corporation with its principal place of business in Illinois, while XRE's principal place of business was Massachusetts.  <u>Id.</u> at *1.  Accordingly, XRE was "not an Illinois consumer" and could not assert a claim for violation of the ICFA.  <u>Id.</u> at *3.  The chance "[t]hat

13

Continental's conduct might possibly have reached <u>some</u> Illinois consumer is not enough. Because there can be no claim without a <u>specific injury</u> to an Illinois consumer, XRE cannot invoke the protection of the [ICFA]."  <u>Id.</u> at *3 (emphasis added).

The fact that there may be a consumer somewhere in the chain of commerce for accused products is inadequate to maintain a claim under the ICFA.  In <u>Ivanhoe Fin. Inc. v. Highland Banc Corp.</u>, plaintiff Ivanhoe purchased defendant's assistance in finding potential borrowers, and this "product" was then incorporated into home mortgage loans.  Civ. No. 03-7336, 2004 WL 2091997, at *5 (N.D. Ill. Sept. 15, 2004).  Not only was the plaintiff not a consumer, but the ultimate consumers were "sophisticated entities" that were well-versed in the purchase of such services.  <u>Id.</u> at *6.  Indeed, the court determined that "[t]he interests of such entities, which are fully capable of protecting themselves via contract and tort law, are not the kind the [ICFA] is designed to protect."  <u>Id.</u>  <u>Ivanhoe</u> is instructive that a corporation cannot assert an ICFA claim if only the interests of other, sophisticated corporate entities are implicated.

Accordingly, here, CA cannot satisfy the "consumer nexus" test, and therefore cannot assert a claim under the ICFA.  The Amended Complaint concedes that "Rocket markets its DB2 administration products through its original equipment manufacturing partner IBM." (Am. Compl. ¶ 12).  The only "consumers" of Rocket's DB2 products are "major businesses [that have amassed] huge amounts of information."  (Am. Compl. ¶ 13.)  To the extent that any "consumers" have been affected by Rocket's conduct, it is only those large entities who have bought DB2 products from IBM, and these corporations were not those that the ICFA was intended to protect.  <u>See</u> <u>Ivanhoe</u>, 2004 WL 2091997, at *6.  Any alleged harm suffered by these corporate "consumers" would certainly fall short of implicating "public health, safety or welfare," as required by the court in <u>Credit Ins. Consultants, Inc.</u>  210 F. Supp. 2d at 985.  Thus,

even if CA had alleged some harm to Illinois-based entities in the Amended Complaint (which it has not), this would still be insufficient to invoke the protections of the ICFA. See Continental X-Ray Corp., 1995 WL 599064, at *2–3.

C.    **The Claim Is Preempted By The Copyright Act**

The federal Copyright Act preempts state law causes of action that are "equivalent to any of the exclusive rights within the general scope of copyright." 17 U.S.C. § 301(a). Specifically, "[t]he Copyright Act exclusively governs a claim when: (1) the particular work to which the claim is being applied falls within the type of works protected by the Copyright Act under 17 U.S.C. §§ 102 and 103, and (2) the claim seeks to vindicate legal or equitable rights that are equivalent to one of the bundle of exclusive rights already protected by copyright law under 17 U.S.C. § 106." Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc., 373 F.3d 296, 305 (2d Cir. 2004). The first prong of the Briarpatch preemption test, known as the "subject matter requirement," is satisfied where the claim applies to a work of authorship falling within one of the categories of copyrightable works. Id. at 305. The second prong, known as the "general scope requirement," is satisfied where the state-created claim contains no additional elements outside of the reproduction, adaptation, performance, distribution or display requirements of a federal copyright claim. Id.

For example, in Natkin v. Winfrey, 111 F. Supp. 2d 1003, 1014 (N.D. Ill. 2000), a federal district court held that an ICFA claim was preempted by the federal Copyright Act. In Natkin, the plaintiffs were free-lance photographers who photographed Oprah Winfrey and her television show guests. Id. at 1006. Winfrey incorporated several of those photographs in a book she wrote, and the plaintiffs filed suit alleging that the publication of the photographs infringed plaintiffs' copyright and constituted a violation of the Illinois Consumer Fraud Act. Id. at 1005-07. The court observed that although the plaintiffs were "creative in arguing all the

15

various harms they suffered as a result of [the defendant's] alleged misuse of [the] photographs, they allege only a garden variety copyright violation." Id. at 1014. That, the court held, was insufficient to avoid preemption.

Similarly, here, CA has alleged that Rocket used CA's copyrighted DB2 source code without CA's permission to develop competing DB2 products, and licensed these illegally-developed products to its OEM partners as if they were Rocket's own. (See Am. Compl. ¶ 70.) Those allegations satisfy both Briarpatch factors, namely, that the claim (i) involves copyrighted material (the CA source code) and (ii) does not require proof of any additional elements beyond those required to establish a case of copyright infringement. See Briarpatch, 373 F.3d at 305. Inasmuch as CA's purported ICFA claim is nothing more than a "creative" restyling of what is, at bottom, "a garden variety copyright violation," it should be dismissed. See Natkin, 111 F. Supp. 2d at 1014.

## IV.  COUNT IV:  CA'S CONVERSION CLAIM SHOULD BE DISMISSED

### A.  The Claim Is Time-Barred

Conversion is the "unauthorized assumption of ownership of and exercise of right over property belonging to another, to the exclusion of the owner's right therein." Trustforte Corp. v. Eisen, Civ. No. 600521/2005, 2005 WL 3501587, at *2 (N.Y. Sup. Ct. Nov. 15, 2005) (emphasis added). Pursuant to N.Y. C.P.L.R. § 214(3), a claim for conversion is governed by a three-year statute of limitations; the claim accrues "when the conversion occurs and not when the conversion is discovered or when plaintiff exercises diligence to discover it." Calcutti v. SBU, Inc., 224 F. Supp. 2d 691, 702 (S.D.N.Y. 2002) (emphasis added). CA alleges that prior to leaving Platinum in 2000, the Rocket Developers converted CA property by copying "onto their laptops and/or other electronic media, or otherwise appropriated some or all of the source code for CA's DB2 Products." (Am. Compl. ¶¶ 27, 34, 35.) Accordingly, CA's alleged conversion

claim accrued in 2000 -- seven years ago -- and is barred by the applicable three-year statute of limitations.

### B. The Amended Complaint Fails To Allege That Rocket Denied CA Access To Its Source Code

In <u>Trustforte</u>, the plaintiffs alleged that an individual defendant was liable for, <u>inter alia</u>, conversion, because he copied plaintiffs' customer lists and other information. Yet the court noted that plaintiffs failed to allege that the defendant "did anything to exclude plaintiffs from exercising their rights over the information." <u>Id.</u> at *2.  In dismissing the claim for conversion, the court reasoned that the plaintiffs "have simply alleged that defendant [] <u>copied</u> the relevant information, not that he destroyed it or erased it or did anything else that <u>denied</u> <u>plaintiffs access to it</u>." <u>Id.</u> at *2 (emphasis added).  As in <u>Trustforte</u>, CA's Amended Complaint does not allege that Rocket denied CA access to the CA source code or proprietary information, or that Rocket's alleged misappropriation of CA's source code has been to the exclusion of CA's use of the same source code.  CA has instead alleged that the Rocket Developers <u>copied</u> "onto their laptops and/or other electronic media, or otherwise appropriated some or all of the source code for CA's DB2 Products." (<u>See</u> Am. Compl. ¶¶ 34, 35.)  Accordingly, under <u>Trustforte</u>, CA's conversion claim fails and should be dismissed.

### C. The Claim Is Preempted By The Copyright Act

A conversion claim is preempted by the Copyright Act when a party seeks damages "for unauthorized use by defendants in a manner that is equivalent with rights protected by § 106 [of the Copyright Act]." <u>Logicom Inclusive, Inc. v. W.P Stewart & Co.</u>, Civ. No. 04-0604, 2004 WL 1781009, at *17 (S.D.N.Y. Aug. 10, 2004).

In <u>Logicom</u>, plaintiffs sued for copyright infringement and common law claims arising out of allegations that defendants infringed their exclusive rights under the Copyright Act

to create derivative works of computer programs.  The court critically analyzed the plaintiffs'

claim for conversion and determined that "it is actually based not on the physical possession of

plaintiffs' programs itself, but defendants' derivative use of the programs."  Id. at *17.

Importantly, the court determined that the conversion claim was preempted because of the

allegation in the plaintiffs'(proposed amended) complaint that "'[t]he software programs are

invaluable because their use by defendants enables WPS to conduct its business.'"  Id. (emphasis

original).  That state law claim, the court held, was preempted by the Copyright Act because it

sought damages for unauthorized use in a manner equivalent to rights protected by the Copyright

Act.  Id.

        Substantially similar language appears in CA's Amended Complaint.  This is

most apparent in paragraph 77, where CA alleges that Rocket "approved of [the Rocket

Developers] using or directed them to use or assist other Rocket employees in using this

information to develop products that function like and directly compete with CA's DB2

Products."  (Am. Compl., Count IV, ¶ 77 (emphasis added).)  That allegation unmasks CA's

conversion claim as simply a re-worked claim for copyright infringement.  It is therefore

preempted, and should be dismissed.

## V.     COUNT V:  CA'S TRESPASS TO CHATTELS CLAIM SHOULD BE DISMISSED

### A.    The Claim Is Time-Barred

        The statute of limitations for a trespass claim is three years, and even an alleged

continuous violation will not save alleged claims that occurred more than three years ago.  N.Y.

C.P.L.R. § 214(3); Cranesville Block Co., Inc. v. Niagara Mohawk Power Corp., 175 A.D.2d

444, 446 (3d Dep't 1991).  In Cranesville, an applicable decision interpreting the same statute of

limitations in the context of trespass to property, the Appellate Division determined that the

statute of limitations barred the "recovery of damages more than three years prior to

commencement of the action." <u>Id.</u> The plaintiff in <u>Cranesville</u>, a holder of easement rights, sued

the defendant property owner for, <u>inter alia</u>, trespass, alleging that the property owner violated

the easement rights by constructing pipelines on the property. The court determined that a

factual question existed as to whether the pipeline construction actually interfered with the

easement rights but determined that, nevertheless, the statute of limitations would bar damages

allegedly sustained more than three years before the litigation.

Though intellectual property, not easement rights, are at issue here, the result

should be no different. As <u>Cranesville</u> instructs, all alleged acts of trespass to chattels occurring

before April 9, 2004 (three years before the complaint was filed) are time-barred as a matter of

law.

**B.** **The Allegations Of The Amended Complaint Are**
**Insufficient To Support A Trespass To Chattels Claim**

To state a claim for trespass to chattels, a plaintiff must establish that a defendant

"intentionally, and without justification or consent, physically interfered with the use and

enjoyment of personal property in [plaintiffs'] possession,' and that plaintiffs were thereby

harmed." <u>In re Jet Blue Airways Corp. Privacy Litig.</u>, 379 F. Supp. 2d 299, 327 (E.D.N.Y. 2005)

(Amon, J.). The allegations must not be generic, and facts must be alleged that could sustain

such a showing of "actual damages." <u>Id.</u> at 328.

<u>Jet Blue</u> is instructive. In that case, a nationwide class of passengers brought suit

against the airline and a data company for, <u>inter alia</u>, trespass to chattels as a result of the

airline's transfer of their personal information to the data company. The plaintiffs only "allege[d]

rather generically" that they suffered actual damages, and did not allege that the quality or value

of the chattel (their personal information) was in any way diminished, or any facts that could

sustain such a showing. <u>Id.</u> That alone was sufficient to warrant dismissal, though Judge Amon

19

also noted that the plaintiffs had not been "deprived of the use of their personal information at any point, let alone for a substantial period of time." <u>Id.</u> at 329.

Judge Amon's analysis in <u>Jet Blue</u> is equally applicable here.  CA has not alleged, nor could it, that it was deprived of its proprietary information for any period of time (let alone a substantial period).  (<u>See also</u> Section IV(B), <u>supra</u>.)  Moreover, CA has not alleged, as required, any specific, particularized, actual damages that it suffered.   At most, it has vaguely alleged "enormous economic harm," "diminishment of the value of its property . . . lost profits and market share, and irreparable harm."  (Am. Compl. ¶ 57, 83.)  Similar allegations were not sufficient to sustain a claim for trespass to chattels in <u>Jet Blue</u>, and they are not sufficient here.

## C.    <u>The Claim is Preempted by the Copyright Act</u>

Although the issue has not been considered by New York district courts, at least one court has recognized that the Copyright Act preempts a claim for trespass to chattels. <u>Healthcare Advocates, Inc. v. Harding, Earley, Follmer & Frailey</u>, 497 F. Supp. 2d 627, 650 (E.D. Pa. 2007).  In that case, defendants used an internet search program called the Wayback Machine, which allowed them to view and copy archived screen shots and information from plaintiff's website, thus circumventing plaintiff's electronic protective measures without authorization.  <u>Id.</u> at 629, 632.  In applying what amounts to the <u>Briarpatch</u> test, the court determined that plaintiff's claim for trespass to chattels "require[d] nothing more than what is required under copyright law to establish infringement," and therefore refused to permit plaintiff to "remedy its federal copyright rights under" state law.  <u>Id.</u> at 650.  Similarly, the crux of CA's Amended Complaint is that Rocket has allegedly infringed its copyrighted source code -- therefore, just as the court in <u>Healthcare Advocates</u> refused to permit the plaintiff to seek relief under state law for claims that properly implicate only federal statutes, so too should the Court in

20

this case deny CA's attempt to bootstrap a series of preempted state law claims onto its copyright claim.

**VI.     COUNT VI:  CA'S INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE CLAIM SHOULD BE DISMISSED**

### A.     The Claim Is Time-Barred

A claim for intentional interference with prospective economic advantage is governed by a three-year statute of limitations, and a plaintiff's claim accrues on the date of injury.   N.Y. C.P.L.R. § 214(4); Johnson v. Nyack Hosp., 891 F. Supp. 155, 166 (S.D.N.Y. 1995).  Subsequent alleged injuries are "immaterial to the issue of timeliness." Id.  That was the case in Johnson, where the court rejected an argument that a claim is not time-barred when injury occurs within the three-year limitation period.  Id.

CA's Amended Complaint includes allegations that (i) "[h]ad Rocket not stolen CA's copyrighted and trade secret information and used it to launch a suite of nearly-identical products, CA's share of the DB2 database administration software market would likely have been substantially greater than it is today, and the price at which CA would have been able to sell its DB2 Products would have been substantially higher" (Am. Compl. ¶ 87); (ii) by mid- to late-2001, "Rocket launched at least six DB2 database administration tools spanning at least three DB2 market segments" (id. ¶ 41); and (iii) its customers were aware of and using Rocket's DB2 products.  (See id. ¶ 42.)  These allegations indicate that the injury to CA, if any, occurred by 2001 (at the latest) after Rocket introduced -- and customers purchased -- its DB2 products.  As such, CA's intentional interference with prospective economic advantage claim is untimely and should be dismissed in its entirety.  Johnson, 891 F. Supp. at 166.

**B.    The Amended Complaint Fails To Allege**
**The Specific Business Relationships As Required**

To state a claim for intentional interference with prospective economic relationship, a plaintiff must allege "that (1) it had a business relationship with a third party; (2) the defendant knew of that relationship and intentionally interfered with it; (3) the defendant acted solely out of malice, or used dishonest, unfair, or improper means; and (4) the defendant's interference caused injury to the relationship." Croton Watch Co., Inc. v. Nat'l Jeweler Magazine, Inc., Civ. No. 06-662, 2006 WL 2254818, at *9 (S.D.N.Y. Aug. 7, 2006) (dismissing claim of tortious interference).

CA's unjust enrichment claim fails because the Amended Complaint does not identify specific third parties that were prevented from entering into a business relationship with the plaintiff, and it does not specifically plead that a contract would have been entered into but for the alleged interference.  See Fuel Digital, Inc. v. Corinella, No. 602497/06, 2006 WL 4476202, at *5 (N.Y. Sup. Ct. Oct. 24, 2006); Brown v. Bethlehem Terrace Assocs., 136 A.D.2d 222 (3d Dep't 1998).   In Fuel Digital, a New York court dismissed an intentional interference with prospective economic advantage claim where the counterclaim plaintiff failed to make specific allegations that identified individually named clients.  Id. at *5.  The court noted that the counterclaim-plaintiff made only general assertions that the conduct at issue was "injuring [the counterclaim-plaintiff] in his business and profession," and failed to "allege that [previously-identified] named clients, or any other specifically-named client, ceased doing business or would not do business with [the counterclaim plaintiff]." Id.  Likewise, in Brown, the court identified as "an essential element" of the tort "that the complaining party would have consummated a contract but for the interference of a third party, and defendants' vague references to difficulty . . . do not satisfy this strict requirement that specific allegations be pleaded."  136 A.D.2d at 222.

CA's claim suffers from the same pleading deficiencies discussed in <u>Fuel Digital</u> and <u>Brown</u>.  Nowhere does CA identify <u>specific</u>, <u>named clients</u> that "ceased doing business or would not do business" with CA.  <u>See</u> <u>Fuel Digital</u>, 2006 WL 4476202, at *5.  Instead, CA merely alleges that it "has a reasonable expectation in continuing and advantageous [sic] economic relationships with current and prospective purchasers and licensees of its DB2 Products."  (Am. Compl. ¶ 85.)  CA also fails to allege that it would have consummated a specific contract "but for" Rocket's alleged intentional interference; rather, CA alleges that its share of the market "would likely have been substantially greater."  (<u>Id.</u> ¶ 87.)  These allegations are inadequate as a matter of law and necessitate dismissal.

## VII.   COUNT VII:  CA'S UNJUST ENRICHMENT CLAIM SHOULD BE DISMISSED

### A.   The Claim Is Time-Barred

A claim for unjust enrichment accrues upon occurrence of the allegedly wrongful act and is customarily governed by a six-year statute of limitations under New York's residual limitations period.  N.Y. C.P.L.R. § 213(1); <u>Elliott v. Qwest Communications Corp.</u>, 808 N.Y.S.2d 443, 444-45 (3d Dep't 2006).  However, if the unjust enrichment claim is <u>merely incidental to or duplicative of</u> another claim with a shorter limitations period, the shorter limitations period applies.  <u>Malmsteen v. Berdon, LLP</u>, 477 F. Supp. 2d 655, 668 (S.D.N.Y. 2007).  In <u>Malmsteen</u>, a suit by a professional musician against his former manager for, inter alia, breach of fiduciary duty, the court dismissed an unjust enrichment claim as duplicative and determined that the plaintiff could not recast that claim to avoid the statute of limitations applicable to the untimely breach of fiduciary duty claim.

CA's "unjust enrichment" claim is similarly a duplicative rearticulation of its copyright and misappropriation of trade secrets claims.  (<u>See</u> Am. Compl. ¶ 92 (Rocket allegedly "unjustly received benefits at the expense of CA through the wrongful conduct alleged in this

23

[Amended] Complaint, including infringement of CA's copyrights and misappropriation of its

trade secrets.").)  Accordingly, CA has failed to allege "a non-duplicative and timely cause of

action" for unjust enrichment and should not be permitted to circumvent a three-year statute of

limitations simply by adding a duplicative claim for "unjust enrichment."  (Count I; see Section I,

supra.)  That claim should be therefore dismissed.  See Malmsteen, 477 F. Supp. 2d at 667-68.

**B.      The Claim Is Preempted By The Copyright Act**

In the Second Circuit, unjust enrichment claims are conclusively preempted by

claims for copyright infringement.  For instance, in Orange County Choppers, Inc. v. Olaes

Enter., Inc., Civ. No. 06-7211, 2007 WL 2161777 (S.D.N.Y. July 27, 2007), a federal district

court granted a motion to dismiss an unjust enrichment counterclaim on preemption grounds.  Id.

at *8.  In that case, the plaintiffs entered into a license and distribution agreement with the

defendant, pursuant to which the plaintiffs obtained certain intellectual property rights relating to

the defendant's designs.  Id. at *1.  The court held that the defendant's unjust enrichment

counterclaim was preempted because it was based on the reproduction and distribution of the

defendant's copyrighted designs and was not "qualitatively different from a copyright

infringement claim." Id. at *9.  Similarly, in Logicom Inclusive Inc. v. W.P. Stewart & Co., the

district court refused to permit a plaintiff to simultaneously assert claims for both unjust

enrichment and copyright infringement.  Civ. No. 04-0604, 2004 WL 1781009 (S.D.N.Y. Aug.

10, 2004).  The plaintiff alleged only "that the defendants have misappropriated Logicom's

software and used the programs to make derivative works for their own benefit." Id. at *18.

Noting that "[c]laims for unjust enrichment are generally preempted by copyright law, the court

determined that this was a textbook example of a state law claim that was preempted by federal

copyright law, because the thrust of the unjust enrichment claim was merely that a federally

protected work had been copied without authorization and incorporated into a new product.  Id.

24

The Court should reach the same result here.  CA's "unjust enrichment claim" centers on the infringement of CA's copyrights and the misappropriation of its source code. (E.g., Am. Compl. ¶ 92.)  That allegation confirms that both <u>Briarpatch</u> factors are satisfied, namely that the claim (i) involves copyrighted material (the CA source code) and (ii) does not require proof of any additional elements beyond those required to establish a case of copyright infringement.  <u>See Briarpatch</u>, 373 F.3d at 305.  Therefore, CA's unjust enrichment claim is preempted, and should be dismissed.

<u>**CONCLUSION**</u>

For the foregoing reasons, Rocket's motion to dismiss should be granted and the claims in the Amended Complaint should be dismissed with prejudice as discussed herein.

Dated: November 14, 2007
     New York, New York

Respectfully submitted,

/s/ P. Anthony Sammi
Thomas J. Dougherty
Justin J. Daniels
P. Anthony Sammi
SKADDEN, ARPS, SLATE,
   MEAGHER & FLOM LLP
Four Times Square
New York, New York  10036
(212) 735-3000

-- and --

One Beacon Street
Boston, Massachusetts 02108
(617) 573-4800

Counsel for Defendant
Rocket Software, Inc.

25

**<u>CERTIFICATE OF SERVICE</u>**

       I, P. Anthony Sammi, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on November 14, 2007.


Dated:  November 14, 2007                    /s/ P. Anthony Sammi
                                                  P. Anthony Sammi