**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

CA, INC., COMPUTER ASSOCIATES
THINK, INC., PLATINUM
TECHNOLOGY INTERNATIONAL,
INC., and PLATINUM TECHNOLOGY IP,
INC.,

                      *Plaintiffs*,

                      v.

ROCKET SOFTWARE, INC.,

                      *Defendant*.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

:    Civil Action No.:  07-CV-1476 (ADS) (MLO)

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO
<u>ROCKET SOFTWARE, INC.'S MOTION TO DISMISS THE COMPLAINT</u>**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...................................................................................1

THE FACTS ALLEGED IN CA'S AMENDED COMPLAINT ...................................................2

The Amended Complaint Alleges That Rocket Continues
To Distribute Products Made Using CA's Stolen Property .........................................2

The Amended Complaint Specifically Alleges That Rocket
Misrepresented And Fraudulently Concealed Its Illegal Acts ....................................4

ARGUMENT ................................................................................................6

I.   THE COPYRIGHT INFRINGEMENT CLAIMS (COUNT I) ARE TIMELY .................6

     A.   Rocket Agrees That The Copyright Infringement
          Claims Based On Rocket's Infringements In the Three
          Years Before CA Filed This Lawsuit Are Not Time-Barred ..................................6

     B.   The Copyright Infringement Claims Based On Rocket's Infringements
          Prior To Three Years Before CA Filed This Lawsuit Are Not Time-Barred .........7

II.  THE TRADE SECRET MISAPPROPRIATION
     CLAIMS (COUNT II) ARE TIMELY .............................................................12

     A.   The Trade Secret Misappropriation Claims Based on Rocket's Infringements
          In The Three Years Before CA Filed This Law Suit Are Not Time-Barred .........12

     B.   The Trade Secret Misappropriation Claims Based on Rocket's Infringements
          More Than Three Years Before CA Filed This Lawsuit Are Not Time Barred ....14

III. CA'S UNFAIR COMPETITION CLAIMS (COUNT III) ARE TIMELY,
     WELL-PLEADED, AND NOT PREEMPTED BY THE COPYRIGHT ACT ...............14

     A.   The Unfair Competition Claims Are Not Time-Barred ........................................14

     B.   CA Has Standing To Sue Under Illinois'
          Consumer Fraud And Deceptive Business Practices Act .....................................15

     C.   CA's Unfair Competition Claims Are Not Preempted By The Copyright Act .....17

IV.  CA'S REMAINING CLAIMS (COUNTS IV-VII,
     STATUTORY DAMAGES AND ATTORNEYS' FEES) ARE
     ALSO TIMELY, WELL-PLEADED AND NOT PREEMPTED ....................................19

## TABLE OF CONTENTS

**Page**

A.    Counts IV-VII And The Claims For Statutory
      Damages And Attorneys' Fees Are Timely.................................................19

B.    Counts IV-VII Are Well-Pleaded ...........................................................21

      1.  CA's Conversion Claim (Count IV) Is Well-Pleaded.....................................21

      2.  CA's Trespass to Chattels Claim (Count V) Is Well-Pleaded .........................22

      3.  CA's Intentional Interference With Prospective
          Economic Advantage Claim (Count VII) Is Well-Pleaded.............................23

C.    Counts IV, V and VII Are Not Preempted................................................24

CONCLUSION.................................................................................25

# TABLE OF AUTHORITIES

## CASES

**Page(s)**

*Architectronics, Inc. v. Control Sys., Inc.*,
   935 F. Supp. 425 (S.D.N.Y. 1996).........................................................................   13

*Barksdale v. Robinson*,
   211 F.R.D. 240 (S.D.N.Y. 2002) ...........................................................................   10, 11

*Bausch & Lomb Inc. v. Alcon Laboratories, Inc.*,
   64 F. Supp. 2d 233 (W.D.N.Y. 1999) .....................................................................   13, 14

*Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.*,
   373 F.3d 296 (2d Cir. 2004), *cert. denied*, 544 U.S. 949 (2005) .........................   17, 18

*Brown v. Bethlehem Terrace Assocs.*,
   136 A.D.2d 222 (N.Y. App. Div. 1998) ..................................................................   24

*Bunting v. Progressive Corp.*,
   348 Ill. App. 3d 575 (Ill. App. 2004) ......................................................................   17

*Burgos v. Greiner*,
   No. 98-CV-4855, 1999 WL 551229
   (E.D.N.Y. Jun. 21, 1999) .......................................................................................   9

*CSFB Holt LLC v. Collins Steward Ltd.*,
   No. 02 Civ. 3069, 2004 WL 1794499
   (S.D.N.Y. Aug. 10, 2004) .......................................................................................   13, 19

*CTS Corp. v. Raytheon Co.*,
   Civ. No. 92-3878, 1993 WL 157464
   (N.D. Ill. May 12, 1993) .........................................................................................   15

*Chance v. Armstrong*,
   143 F.3d 698 (2d Cir. 1998)....................................................................................   6

*Chicago Bd. Options Exch.*,
   No. 06 C 6852, 2007 U.S. Dist. LEXIS 13007
   (N.D. Ill. Feb 23, 2007)...........................................................................................   18

*Cirone-Shadow v. Union Nissan*,
   No. 94 C 6723, 1995 U.S. Dist. LEXIS 5232
   (N.D. Ill. Apr. 19, 1995) .........................................................................................   17

*Cirrincione v. Johnson*,
   184 Ill. 2d 109 (Ill. 1998)........................................................................................   22

# TABLE OF AUTHORITIES

## CASES

**Page(s)**

*Continental X-Ray Corp. v. XRE Corp.*,
Civ. No. 93-3522, 1995 WL 599064
(N.D. Ill. Oct. 2, 1995) ................................................................................. 17

*Cranesville Block Co., Inc. v. Niagara Mohawk Power Corp.*,
175 A.D.2d 444 (N.Y. App. Div. 1991) ............................................................ 20

*Credit Insurance Consultants, Inc. v. Gerling Global Reinsurance Corp. of America*,
210 F. Supp. 2d 980 (N.D. Ill. 2002) .................................................... 15, 17

*In re Cross Media Mktg. Corp.*
No. 06 Civ. 4228, 2006 WL 2337177,
(S.D.N.Y. Aug. 11, 2006) .................................................................................. 22

*EZ-TIXZ, Inc. v. HIT-TIX, Inc.*,
919 F. Supp. 728 (S.D.N.Y. 1996) ........................................................... 21

*Elghanayan v. Elghanayan*,
190 A.D.2d 449 (N.Y. App. Div. 1993) ............................................................ 13

*Fry v. UAL Corp.*,
136 F.R.D. 626 (N.D. Ill. 1991) ......................................................................... 17

*Fuel Digital, Inc. v. Corinella*,
No. 602497/06, 2006 WL 4476202
(N.Y. Sup. Ct. Oct. 24, 2006) ............................................................................. 24

*Hannex Corp. v. GMI, Inc.*,
140 F.3d 194 (2d Cir. 1998) ..................................................................... 21, 25

*Iqbal v. Hasty*,
490 F.3d 143 (2d Cir. 2007) .............................................................................. 6

*Ivanhoe Financial Inc. v. Highland Banc Corp.*,
Civ. No. 03-7336, 2004 WL 2091997
(N.D. Ill. Sept. 15, 2004) .................................................................................... 17

*Ivy Mar Co., Inc. v. C.R. Seasons Ltd.*,
Case No. 95-CV-0508, 1998 WL 704112
(E.D.N.Y. Oct. 7, 1998) ............................................................................. 24, 25

*In re Jet Blue Airways Corp. Privacy Litig.*,
379 F. Supp. 2d 299 (E.D.N.Y. 2005) ............................................................ 23

# TABLE OF AUTHORITIES

## CASES

**Page(s)**

*Johnson v. Jones,*
    149 F.3d 494 (6th Cir. 1998) ............................................................    20

*Kwan v. Schlein,*
    441 F. Supp. 2d 491 (S.D.N.Y. 2006)................................................    14

*Lemelson v. Carolina Enters., Inc.,*
    541 F. Supp. 645 (S.D.N.Y. 1982).....................................................    13

*In re Merrill Lynch Ltd. P'ships Litig.,*
    154 F.3d 56 (2d Cir. 1998)..................................................................    7

*Martin v. Julius Dierck Equipment Co.,*
    43 N.Y.2d 583 (1978) ........................................................................    13

*McNabb Bennett & Associates, Inc. v. Terp Meyers Architects,*
    1987 U.S. Dist. LEXIS 1787 (N.D. Ill. Mar. 10, 1987).....................    25

*Mopex v. Am. Stock Exch.,*
    No. 02 Civ. 1656, 2002 WL 342522
    (S.D.N.Y. Mar. 5, 2002) ....................................................................    13

*Natkin v. Winfrey,*
    111 F. Supp. 2d 1003 (N.D. Ill. 2000) ...............................................    18, 19

*Norbrook Labs. v. G.C. Hanford Mfg. Co.,*
    297 F. Supp. 2d 463 (N.D.N.Y. 2003)................................................    13

*Pain Prevention Lab, Inc. v. Electronic Waveform Labs, Inc.,*
    657 F. Supp. 1486 (N.D. Ill. 1987) ....................................................    15

*Pocohontas Supreme Coal Co. v. Bethlehem Steel Corp.,*
    828 F.2d 211 (4th Cir. 1987) ..............................................................    10

*Prather v. Neva Paperback, Inc.,*
    446 F.2d 338 (5th Cir. 1971) ..............................................................    10

*Roberts v. Keith,*
    No. 04 Civ. 10079, 2006 U.S. Dist. LEXIS 8959
    (S.D.N.Y. Mar. 7, 2006) ....................................................................    7, 8

# TABLE OF AUTHORITIES

## CASES

**Page(s)**

*Sharp v. Patterson*,
    No. 03 Civ. 8772, 2004, U.S. Dist. LEXIS 22311
    (S.D.N.Y. Nov. 3, 2004) .......................................................................................... 6

*Shred-It USA, Inc. v. Mobile Data Shred, Inc.*,
    202 F. Supp. 2d 228 (S.D.N.Y. 2002) ................................................................ 23, 24

*Simcuski v. Saeli*,
    44 N.Y.2d 442 (N.Y. 1978) ................................................................................... 14

*Stone v. Williams*,
    970 F.2d 1043 (2d Cir. 1992), *cert. denied*, 508 U.S. 906 (1993) ....................... 6, 7, 10

*Sun Oil Co. v. Wortman*,
    486 U.S. 717, 108 S. Ct. 2117 (1988) ................................................................... 13

*Swartz v. Schaub*,
    818 F. Supp. 1214 (N.D. Ill. 1993) ....................................................................... 16

*The Prudential Ins. Co. v. Sipula*,
    776 F.2d 157 (7th Cir. 1985) ............................................................................ 15, 16

*Troll Co. v. Uneeda Doll Co.*,
    483 F.3d 150 (2d Cir. 2007) ................................................................................. 21

*Trustforte, Corp. v. Eisen*,
    Civ. No. 600521/2005
    2005 WL 3501587 (N.Y. Sup. Ct. Nov. 15, 2005) .............................................. 22

*Tylka v. Gerber Prods. Co.*,
    182 F.R.D. 573 (N.D. Ill. 1998) ........................................................................... 16

## STATUTES

815 ILCS § 505/1 (2007) ............................................................................................ 15

815 ILCS § 505/2 (2007) ............................................................................................ 15

815 ILCS § 505/10 (2007) .......................................................................................... 15

## MISCELLANEOUS

H.R. Report No. 94-1476, at 133 (1976) ..................................................................... 25

## PRELIMINARY STATEMENT

At the outset, it is clear that the instant motion to dismiss is not a case-dispositive motion, because Rocket Software, Inc. ("Rocket") did not request dismissal of the plaintiffs' (collectively, "CA") copyright infringement claims for the three years immediately before CA filed this lawsuit.  Thus, regardless of the outcome of this motion, CA's action against Rocket will continue.

Rocket also fails to acknowledge its own role in concealing the truth from CA.  Far from merely dismissing CA's suspicions as without merit, Rocket provided CA with repeated assurances that it had conducted an investigation which ruled out the possibility that Rocket engaged in the improper behavior suspected by CA.  Now, having made such categorical denials, first in 2001 and then in 2004, it complains that CA did not sue it quickly enough.  The Court should estop Rocket from claiming that CA's action is time-barred, or otherwise toll the statute of limitations, because Rocket concealed the facts giving rise to CA's claims.

The Amended Complaint alleges with particularity that Rocket intentionally prevented the plaintiffs from discovering the facts giving rise to their claims by affirmatively misrepresenting and fraudulently concealing them.  Rocket's efforts to misrepresent and fraudulently conceal its illegal acts serve to toll the statute of limitations and should estop Rocket from now relying on such a defense.

As to the timeliness of the trade secret misappropriation claims, Rocket applies the wrong law.  New York law (not Illinois), which provides that each successive distribution of a product incorporating misappropriated trade secrets is a separate and distinct misappropriation, applies. Because the Amended Complaint alleges that Rocket distributes to this day products developed using CA's stolen trade secrets (Amended Complaint, Docket #3 ("AC") ¶ 64), the claims based

on Rocket's distribution of products using trade secrets misappropriated from CA in the three years before CA filed this lawsuit are entitled to relief.

Rocket's argument that all of the remaining state-law based claims are preempted by the Copyright Act fails because such claims involve entirely different subject matter than the copyright infringement claims, *e.g.*, CA's proprietary DB2 product development environment, which is not the type of material that falls within the ambit of the Copyright Act.  Rocket's argument that four of the state-law based claims fail to allege facts sufficient to establish an essential element is simply incorrect.  The Amended Complaint pleads facts sufficient to give notice of each of those claims.

On a motion to dismiss, the Court must assume that all of the facts alleged are true and make all reasonable inferences based on those facts in the nonmovant's favor.  Applying that standard, the Court must deny Rocket's motion.

**THE FACTS ALLEGED IN CA'S AMENDED COMPLAINT**

The Amended Complaint alleges in extensive detail how Rocket used CA's copyrights and trade secrets to build its DB2 database administration software products causing CA to lose potential and existing customers and resulting in damages totaling hundreds of millions of dollars.  Furthermore, and having concealed its illegal acts in an effort to fend off legal action by CA, Rocket cannot now hide behind the statute of limitations.  The following is a summary of the relevant allegations.

**The Amended Complaint Alleges That Rocket Continues**
**To Distribute Products Made Using CA's Stolen Property**

DB2 is the principal database for mainframe computers, and DB2 database administration software products are used by businesses throughout the country to help automate and simplify the administration of their DB2 databases.  (AC ¶¶ 13, 15.)  From 2001 to this day, Rocket has

successively marketed the products that are the subject of this litigation to these businesses through its distributor, IBM.  (AC ¶¶ 12, 37-40, 53, 85.)  Clearly, IBM markets Rocket's DB2 database administration software products nationwide, including to customers in Illinois.  Rocket has interfered with CA's current and prospective customer relationships, causing CA to lose the opportunity for profitable licenses.  (AC ¶¶ 85-87, 90.)

CA, through its Platinum subsidiary, developed a sophisticated, highly - competitive line of DB2 database administration software products for mainframe computers at its Illinois location.  (AC ¶ 19.)  A valuable component of each of CA's DB2 database administration software products is its source code.  (AC ¶ 18.)  The source code for CA's DB2 database administration products is maintained on its servers, and stored on back-up tapes, laptops and other electronic media.  (AC ¶ 35.)

Rocket hired at least four former Platinum engineers all of whom had access to all of the copyrighted source code for CA's entire DB2 database administration software product line, and CA's non-copyrightable trade secrets, including its DB2 product development environment. (AC ¶¶ 34-35.)  One or more of the former Platinum engineers are alleged to have downloaded CA's source code for its DB2 database administration software product line onto their laptops, or taken other electronic media, including laptops and back-up tapes, containing the copyrighted source code and CA's proprietary product development environment, and made it available to Rocket, after they joined the company, to develop competing products.  (AC ¶¶ 32, 35-43, 46, 51.)

The Amended Complaint alleges that Rocket successively used CA's property each time it developed products for its DB2 database administration software product line and distributed them to the marketplace through IBM, beginning in 2001 to the present day.  (AC ¶¶ 53, 64.)

Although CA and Rocket's DB2 database administration products are licensed to customers, their source code remains confidential.  (AC ¶¶ 18, 29-30.)

**The Amended Complaint Specifically Alleges That Rocket**
**Misrepresented And Fraudulently Concealed Its Illegal Acts**

The Amended Complaint alleges particularized facts establishing that Rocket misrepresented and fraudulently concealed its illegal acts for more than three years.  It alleges that in or about 2001, two customers notified the company that CA's DB2 Detector product could not run concurrently with Rocket's comparable product, Query Monitor.  (AC ¶ 43.)  This caused CA to begin to suspect that Query Monitor and Detector were similar, but this suspicion could not be confirmed.  The Amended Complaint further alleges that shortly thereafter, in July of 2001, CA wrote to Rocket, accusing it of stealing CA's intellectual property and requesting that Rocket investigate.  (AC ¶ 44.)

On August 23, 2001, Rocket wrote back refuting these suspicions and affirmatively representing that it had conducted a thorough investigation, including interviewing its product developers, and concluded that it had done no wrong.  (AC ¶ 45.)  Rocket's response contained detailed representations, denials of any wrongdoing, and assurances that misappropriation was simply not possible.  Rocket represented that:

- It investigated this matter "in the fullest manner possible."

- "That investigation has been completed, and Rocket has concluded that, in fact, it . . . has not infringed CA's intellectual property or misused its confidential information."

- ". . . [N]o CA product-specific information was used in Query Monitor development."

- "[N]o individual familiar with Detector development at CA was involved in the development of Query Monitor."

- "No one involved in the development of Query Monitor has written, downloaded, or even examined Detector code, or the code of any other CA product."

- "[N]o CA code has been retained by any Rocket developer after leaving [CA] or Platinum, and no CA code has been used in the development of any Rocket product."

- "The Query Monitor 'interface points' and 'SQL statistics collection methodology' were developed at Rocket from scratch, entirely in-house, without making reference to or use of any non-public CA-specific information obtained from any source."

- Mark Pompeii, one of the former engineers, "has never seen or used Detector code, and he has not incorporated any proprietary or confidential techniques utilized in CA's recovery analyzer software in any part of Query Monitor."

- "Rocket will remain committed in the future to the principle of respecting the intellectual property rights of third parties, including [CA]."

(AC ¶ 45.)  The nature of Rocket's representations and the fact that Rocket's source code was and remains confidential dissuaded CA from taking any further action at that time.  (AC ¶ 45.)

The Amended Complaint specifically alleges that Rocket's fraud continued until CA filed this lawsuit.  In 2004, CA received an anonymous letter that appeared to be from a Rocket employee.  (AC ¶¶ 46-47.)  This employee stated that there had been widespread theft of CA's intellectual property—infecting Rocket's entire DB2 product line.  (AC ¶ 46.)  The anonymous letter prompted CA to hire outside counsel to demand that Rocket investigate.  (AC ¶ 47.)  In response to that letter, Rocket again denied any wrongdoing and claimed that it had conducted a second thorough internal investigation.  (AC ¶ 47; *see also* Defendant Rocket Software, Inc.'s Memorandum of Law in Support of Its Motion to Dismiss the Amended Complaint, Docket # 30 ("RB") 7.)  CA demanded that Rocket make its source code for its DB2 database administration products available to a neutral third party for inspection.  (AC ¶ 47.)  For the next several months, CA and Rocket attempted to negotiate the conditions under which this inspection would take place so that the parties' highly confidential source code would be adequately protected.  (AC ¶ 47.)  Rocket never submitted its source code for inspection.  (AC ¶ 47.)

Even now, in an effort to give Rocket an opportunity to support its position that it did not fraudulently conceal its illicit activities, CA served Rocket with interrogatories asking for specific factual information supporting its two alleged "investigations."  (*See* Ex. 1, attached.)  Perhaps unsurprisingly, Rocket refused to provide any response (exception for objections) to CA's queries.  (*See* Ex. 2, attached.)  Rocket continues to conceal its illegal conduct to this day.

## ARGUMENT

The issue to be decided on this motion is whether, accepting all of the pleaded facts as true and drawing all reasonable inferences from those facts in CA's favor, the Amended Complaint sufficiently states the claims.  The question on a motion to dismiss is not whether the non-movant would prevail at trial, *Chance v. Armstrong*, 143 F.3d 698, 701 (2d Cir. 1998), but whether the plaintiffs "failed '*in toto*' to render plaintiffs' entitlement to relief plausible."  *Iqbal v. Hasty*, 490 F.3d 143, 156 (2d Cir. 2007).  The Amended Complaint more than satisfies this standard.

## I.  THE COPYRIGHT INFRINGEMENT CLAIMS (COUNT I) ARE TIMELY

### A.  Rocket Agrees That The Copyright Infringement Claims Based On Rocket's Infringements In the Three Years Before CA Filed This Lawsuit Are Not Time-Barred

Rocket does not dispute that the claims based on Rocket's copyright infringements for at least the three years before CA filed this lawsuit are timely.  (RB 5-6.)  Indeed, a separate and distinct claim for copyright infringement accrues each time an infringing work is distributed, which Rocket does to this day (AC ¶ 53).  *Stone v. Williams*, 970 F.2d 1043, 1049-50 (2d Cir. 1992), *cert. denied*, 508 U.S. 906 (1993); *see also Sharp v. Patterson*, No. 03 Civ. 8772, 2004 U.S. Dist. LEXIS 22311, at *40 (S.D.N.Y. Nov. 3, 2004).  Thus, there is no question that the copyright infringement claims based on Rocket's infringing acts in the three years immediately before CA filed this lawsuit and to the present will remain in the case.

**B.      The Copyright Infringement Claims Based On Rocket's Infringements
Prior To Three Years Before CA Filed This Lawsuit Are Not Time-Barred**

The remaining copyright infringement claims - those based on infringements occurring prior to three years before CA commenced this - action are not time-barred, because Rocket actively worked to prevent CA from discovering the facts giving rise to them.  As alleged in the Amended Complaint, Rocket affirmatively concealed its illegal acts, thereby tolling the statutes of limitations for all of the claims.  Rocket does not dispute that CA has alleged adequate facts, but, instead, argues a variety of theories, relying on case law that does not apply to the facts here. Rocket should not be allowed to argue that CA did not sue Rocket quickly enough, after it provided repeated, strident and detailed assurances to CA that it did not infringe CA's copyrights and misappropriate its trade secrets.

The issue is whether CA's entitlement to relief for the claims is plausible in light of CA's allegations that Rocket fraudulently concealed its illegal actions, taking all reasonable inferences based on those facts in CA's favor.  "[T]he law is clear that fraudulent concealment of the existence of a cause of action tolls the running of the statute of limitations . . . for as long as the fraud is effective." *Stone*, 970 F.2d at 1048.  The allegations in CA's Amended Complaint more than meet this standard, and establish that Rocket's concealment continued until CA filed suit.

Instructive is *Roberts v. Keith*, No. 04 Civ. 10079, 2006 U.S. Dist. LEXIS 8959 (S.D.N.Y. Mar. 7, 2006) (*citing In re Merrill Lynch Ltd. P'ships Litig.*, 154 F.3d 56, 60 (2d Cir. 1998)), in which the court denied a motion to dismiss and tolled the statute of limitations for copyright infringement because it found that the complaint sufficiently alleged particularized facts that the defendant fraudulently concealed its infringing activities. *Roberts*, 2006 U.S. Dist. LEXIS 8959, at *12.  There, the plaintiff-author had alleged that the defendant contacted the plaintiff on a certain date and told that plaintiff that the defendant was not going to publish or use

the copyrighted work, but the defendant nonetheless published (*i.e.*, infringed) the work without the plaintiff's knowledge.  *Id*. at *2-*3.  The court held that the pleadings were sufficiently particularized and gave rise to a strong inference that the defendant had a fraudulent intent.  *Id*. at *13-*14.  The court further held that the plaintiff acted diligently when it contacted the defendant within two months after discovering the fraud and filed the complaint about two years later.  *Id*. Thus, even though the infringement could have been determined from the public domain because the work had been published, the court still tolled the statute of limitations for copyright infringement because of the defendants' fraudulent concealment.  Here, of course, CA could not have made such a determination from the public domain, making CA's argument even stronger.

The Amended Complaint alleges with particularity that Rocket fraudulently concealed its illegal acts, and CA had no way of discovering them, because Rocket keeps its source code confidential and would not make it available for inspection under meaningful terms.  (AC ¶¶ 30, 44-47.)  Rocket's August 2001 letter contains numerous affirmative representations that Rocket conducted an exhaustive investigation, and concluded that it did no wrong.  (AC ¶ 45.)  This letter was hardly a one-paragraph summary denial or otherwise half-baked explanation.  Rather, the letter provided both denials of any wrongdoing, thereby justifying CA's reliance on Rocket's representations, and a detailed explanation - which appears to methodicly rule out the possibility of copying.  (AC ¶ 45.)  Similarly, Rocket's letter in 2004 (after CA notified Rocket about the anonymous letter and with new accusations of wrongdoings) again affirmatively represented that Rocket had conducted a second thorough investigation and concluded that it had done no wrong.  (AC ¶ 47; *see* RB 8.)  The Court should not allow Rocket to now argue that CA brought suit too late after Rocket's repeated assurances prevented CA from discovering Rocket's infringing acts.  (AC ¶¶ 30, 47.)

Like the plaintiff in *Roberts*, CA specifically alleges that Rocket fraudulently concealed its illicit activities giving rise to the claims.  CA diligently pursued its concerns with Rocket by confronting Rocket in 2001 and again in 2004, each time just a few months after CA became suspicious of potential infringement, and filing its lawsuit within the statute of limitations period.  Rocket's fraudulent intent, like the defendant's in *Roberts*, can be inferred from the allegations that Rocket:  (a) would not make its source code available for meaningful analysis (despite CA's request that it be disclosed to CA or a neutral third party for inspection); and (b) made false statements in letters to CA concealing the facts giving rise to the claims.

Rocket relies on cases that it asserts reject the "continuous wrong" doctrine in copyright cases and preclude CA from "reaching back" to recover for infringements occurring before the statute of limitations period.  (RB 5-6.)  But CA is not relying on that doctrine here.  Rather, CA has clearly and particularly alleged that Rocket covered up its illegal activities during that time period, which should thus estop Rocket from relying on the statute of limitations or otherwise toll the statute of limitations.

Similarly, the other cases on which Rocket relies to support the notion that the statute of limitations should not be tolled provide no support for dismissing the claims here.  Rocket relies on *Burgos v. Greiner*, No. 98-CV-4855, 1999 WL 551229 (E.D.N.Y. Jun. 21, 1999), for the "rule" that the defendant must have prevented the plaintiff from discovering the claims in some "extraordinary way." *Burgos*, 1999 WL 551229 at *3.  *Burgos* is inapposite because it is a *habeas corpus* case involving different equities than are presently before this Court. *Id*. at *4.  Even assuming that an "extraordinary way" standard applies (which it does not), the lengths to which Rocket went in preventing CA from discovering its claims were certainly "extraordinary."  CA alleges that Rocket invented mythical investigations and provided false assurances that the

matter had been fully investigated and revealed no wrongdoing.  Moreover, Rocket refused to provide its confidential source code for inspection in a manner which would have allowed for meaningful investigation.

*Stone* and *Prather v. Neva Paperback, Inc.*, 446 F.2d 338 (5th Cir. 1971), relied on by Rocket, also do not support its position here.  *Stone* merely establishes that the fraudulent concealment of facts supporting claims tolls the statute of limitations until the fraud is no longer effective.  *Stone*, 970 F.2d at 1049.  *Prather* is not applicable because, unlike Rocket, the defendant there answered interrogaties disclosing the facts establishing the infringement claim. *Prather*, 446 F.2d at 340.  In contrast, Rocket has repeatedly claimed that it did not take or use any of CA's property in developing its products (and even now refuses to answer interrogatories seeking facts concerning Rocket's alleged "investigations" in 2001 and 2004).  Rocket's argument seems to be that CA had actual notice of its claims in 2001, when it first wrote to Rocket.  Of course, this is factually wrong, or at least presents a factual issue preventing dismissal.  Rocket concealed the facts after CA wrote Rocket; CA did not ignore them.

Rocket cites *Pocohontas Supreme Coal Co. v. Bethlehem Steel Corp.*, 828 F.2d 211 (4th Cir. 1987), for the "rule" that equitable tolling cannot "rest" on the mere fact that Rocket did not own up to its illegal acts.  But *Pocohontas* is distinguishable because, as the court there reasoned, the factual basis for the claims was readily discoverable and in the public domain, unlike the situation here.  *Pocohontas*, 828 F.2d at 218.

Rocket's reliance on *Barksdale v. Robinson*, 211 F.R.D. 240 (S.D.N.Y. 2002), is also misplaced.  *Barksdale* does not set forth the unqualified rule that "[w]hen a copyright owner sends a letter to an alleged infringer, which clearly evidences knowledge of a potential claim, the statute of limitations cannot be tolled," as Rocket asserts   (RB 8), because the court there

considered egregious wrongdoings, such as "lulling the plaintiff into believing it was not necessary to commence suit," but found none. *Id*. at 245. On the contrary, *Barksdale* set forth the rule that "[e]quitable estoppel may toll the limitations period where the plaintiff knew of the existence of the cause of action, but the defendant's misconduct caused the plaintiff to delay in filing suit." *Barksdale*, 211 F.R.D. at 245. In *Barksdale*, the plaintiff, in several cease and desist letters, accused the defendant of fraudulently concealing the plaintiff's sole ownership and authorship of two musical compositions copyrighted and released as being co-owned and co-authored. *Id*. at 243. The defendant argued that the cease and desist letters established that the plaintiff knew of the facts giving rise to the claims. *Id*. at 244-45.

Here, the facts surrounding Rocket's infringement of CA's source code could not be determined because Rocket maintained it as confidential and would not make it available for inspection, unlike in *Barksdale*, where the allegedly improper ownership and authorship could have been ascertained from the release of the compositions and registration of the copyrights. Further, Rocket responded, unlike the defendant in *Barksdale*, to each of CA's letters by affirmatively misrepresenting the facts underlying CA's claims.

Again, in citing to *Barksdale*, Rocket relies only on the notion that CA was on notice of potential claims in July of 2001 when it first wrote to Rocket asking it to investigate. (RB 7-8.) However, once again, this argument is flawed, because it ignores Rocket's subsequent affirmative concealments and misrepresentations. It also ignores the fact that the Amended Complaint alleges numerous separate and distinct infringements by a large number of Rocket products occurring after CA first suspected that Rocket infringed the source code for only one of CA's products, not merely the single potentially infringing act that CA first wrote to Rocket about in 2001 (and about which CA wrote to Rocket in 2001). Indeed, the Amended Complaint

alleges that Rocket infringed more than twenty-three copyrights and stole numerous trade secrets and used them to develop its competing DB2 database administration software products developed and distributed thereafter from 2001 to the present.  (AC ¶¶ 44, 45, 53, 64.)

CA was not on notice of the facts giving rise to the claims in 2001, as Rocket asserts, and CA's fraudulent concealment allegations do not rest on Rocket's failure to confess.  Rather, as in *Roberts*, CA's fraudulent concealment allegations are based on particularized facts establishing that Rocket affirmatively represented in written responses that it made exhaustive investigations, detailing those investigations, and denying any wrongdoing.  Rocket's strategy of making misleading and false responses and its steadfast refusal to make its confidential source code available for inspection (AC ¶¶ 30, 47) successfully deflected litigation until now.

And, having successfully deflected litigation by its own affirmative acts, Rocket now wishes the Court to find "fault" with CA for not having sued Rocket more quickly, and to penalize CA by stripping it of its rights to assert claims against Rocket.  Of course, as demonstrated above, the law does not allow one to use such fraudulent concealment as both a sword and shield.  The statute of limitations, therefore, should be tolled.

## II.  THE TRADE SECRET MISAPPROPRIATION CLAIMS (COUNT II) ARE TIMELY

The trade secret misappropriation claims, like the copyright infringement claims, are not time-barred because:  (1) under New York law a separate and distinct trade secret misappropriation claim accrues each time a product is distributed using stolen trade secrets; and (2) Rocket affirmatively misrepresented and fraudulently concealed its illicit acts.

### A.  The Trade Secret Misappropriation Claims Based on Rocket's Infringements In The Three Years Before CA Filed This Law Suit Are Not Time-Barred

Rocket incorrectly applies Illinois' accrual rule to that portion of CA's trade secret misappropriation claims based on Rocket's illegal acts in the three years immediately preceding

this lawsuit. The law is clear that New York courts apply New York's statutes of limitations, even if another state's law applies to substantive issues. *Architectronics, Inc. v. Control Sys., Inc.*, 935 F. Supp. 425, 430-31 (S.D.N.Y. 1996) (*citing Sun Oil Co. v. Wortman*, 486 U.S. 717, 722-29, 108 S. Ct. 2117, 2121-26 (1988)); *see also Elghanayan v. Elghanayan*, 190 A.D.2d 449, 527 (N.Y. App. Div. 1993). In addition, New York's accrual rules apply here. *Mopex v. Am. Stock Exch.*, No. 02 Civ. 1656, 2002 WL 342522, at *10 (S.D.N.Y. Mar. 5, 2002) (*quoting Martin v. Julius Dierck Equip. Co.*, 43 N.Y.2d 583, 588 (1978)). Under New York law, a trade secret misappropriation claim accrues each time a defendant uses a stolen trade secret for commercial advantage. *Bausch & Lomb Inc. v. Alcon Laboratories, Inc.*, 64 F. Supp. 2d 233, 247 (W.D.N.Y. 1999) (*citing Architectronics*, 935 F. Supp. at 433); *accord CSFB Holt LLC v. Collins Steward Ltd.*, No. 02 Civ. 3069, 2004 WL 1794499, at *8 (S.D.N.Y. Aug. 10, 2004); *Norbrook Labs. v. G.C. Hanford Mfg. Co.*, 297 F. Supp. 2d 463, 488 n.20 (N.D.N.Y. 2003), *aff'd*, 126 Fed. Appx. 507 (2d Cir. 2005); *Lemelson v. Carolina Enters., Inc.*, 541 F. Supp. 645, 659 (S.D.N.Y. 1982). Thus, a separate and distinct trade secret misappropriations claim accrues each time a software product created using the misappropriated trade secrets is distributed. *CSFB Holt*, 2004 WL 1794499, at *8.

In *CSFB Holt*, the court held that trade secret misappropriation claims within the three year period preceding the filing of trade secret misappropriation claims were timely because the complaint alleged that the defendant used the plaintiff's software to develop its own software product, and continued to sell it at the time of trial. *Id.* As in *CSFB Holt*, CA's trade secret misappropriations claims for at least the three years immediately preceding the filing of this lawsuit are timely, because CA alleges that Rocket sold and continues to sell products created using CA's misappropriated trade secrets. (AC ¶ 64.) Alternatively, accrual of CA's claims is a

question of fact and, therefore, not properly decided on a motion to dismiss.  *Bausch & Lomb*, 64 F. Supp. 2d at 246-9 (denying summary judgment).

> **B.     The Trade Secret Misappropriation Claims Based on Rocket's Infringements More Than Three Years Before CA Filed This Lawsuit Are Not Time Barred**

The trade secret misappropriation claims based on Rocket's conduct more than three years before CA filed this lawsuit are also timely, like the copyright infringement claims for this same time period, because Rocket's misrepresentations and fraudulent concealment of its illegal acts should prevent it from even raising a statute of limitations defense, or otherwise toll the statute of limitations.  *Simcuski*, 44 N.Y.2d at 448-49 ("It is the rule that a defendant may be estopped to plead the Statute of Limitations where plaintiff was induced by fraud, misrepresentations or deception to refrain from filing a timely action.").  As discussed above, CA sufficiently alleged that Rocket misrepresented and fraudulently concealed its illegal acts from the beginning of 2001 to this day, which should toll the statute of limitations for this time period. (*See* Section I.A., above.)  Thus, the trade secret misappropriations claims based on Rocket's misappropriations since 2001 are not time-barred.

**III.    CA'S UNFAIR COMPETITION CLAIMS (COUNT III) ARE TIMELY, WELL-PLEADED, AND NOT PREEMPTED BY THE COPYRIGHT ACT**

> **A.     The Unfair Competition Claims Are Not Time-Barred**

The unfair competition claims are not time-barred for the same reasons that the copyright infringement and trade secret misappropriation claims are not time-barred.  As with its argument concerning misappropriation of trade secrets, Rocket fails to apply New York's timing and accrual rules, and acknowledge that the fraudulent concealment doctrine is available.  In addition, under New York law, a separate and distinct act of unfair competition accrues each time a product is distributed that was made using stolen trade secrets.  *Kwan v. Schlein*, 441 F. Supp. 2d 491, 503 (S.D.N.Y. 2006).  Because CA alleged in its Amended Complaint that

Rocket continues to distribute products made using CA's stolen trade secrets and misrepresented and fraudulently concealed its illegal acts (AC ¶ 44-47, 70), none of the claims for unfair competition are time-barred.

**B.      CA Has Standing To Sue Under Illinois'
        Consumer Fraud And Deceptive Business Practices Act**

The Illinois Consumer Fraud and Deceptive Business Practices Act protects against:

> Unfair methods of competition and unfair or deceptive acts or practices. . . , with intent that others rely upon the concealment, suppression or omission of such material fact, . . . in the conduct of any trade or commerce.

815 ILCS § 505/2 (2007).  The statute is written broadly without limit as to the persons who may bring such claims:  "Any person who suffers actual damage as a result of a violation of this Act committed by any other person may bring an action against such person."  815 ILCS § 505/10a (2007).  "Person" is defined as including a corporation.  815 ILCS § 505/1(c) (2007).

Indeed, Rocket acknowledges in its brief that the Act protects businesses who are not consumers of each others' products, but are in fact competitors, like CA and Rocket.  (RB 13 (*citing Credit Ins. Consultants, Inc. v. Gerling Global Reinsurance Corp. of America*, 210 F. Supp. 2d 980, 985-86 (N.D. Ill. 2002))  Rocket quotes *CTS Corp. v. Raytheon Co.*, Civ. No. 92-3878, 1993 WL 157464 (N.D. Ill. May 12, 1993), for the proposition that applies in this situation:  that the alleged conduct merely involve "trade practices addressed to the market generally or otherwise implicat[ing] consumer protection concerns."  *CTS Corp.*, 1993 WL 157464, at *3.  As *CTS* explained, "[n]onconsumer businesses have standing to sue under the Act to redress competitive injury they suffer. . . ."  *Id.*; *see also The Prudential Ins. Co. v. Sipula*, 776 F.2d 157, 165-66 (7th Cir. 1985); *Pain Prevention Lab, Inc. v. Electronic Waveform Labs, Inc.*, 657 F. Supp. 1486, 1493 (N.D. Ill. 1987).  But Rocket nevertheless focuses its entire analysis on consumers, not business competitors like Rocket and CA.

*Prudential* is instructive here.  There, the court reversed the district court's dismissal of Prudential's claims under the Act.  The court held that allegations that a former employee's unlawful use of confidential information with his new company stated a claim for unfair competition under the Act.  *Prudential*, 776 F.2d at 165-66.  The Amended Complaint likewise sufficiently states a claim for unfair competition because it alleges that: Rocket unfairly competed with CA by stealing CA's copyrighted and confidential information (AC ¶¶ 35, 52), using it to develop Rocket's DB2 database administration software product line (AC ¶¶ 56, 63), and, through IBM, passing these products off to customers as if they were originally created by Rocket (AC Preliminary Statement, ¶ 72); Rocket intends for these customers to rely on these misrepresentations (AC ¶ 72); and Rocket's unfair practices have adversely affected competition in the marketplace by eroding the prices for DB2 Products (*see*, *e.g.*, AC ¶ 57).  Given its size, and the size of the market, there seems little question that IBM markets these products to customers in Illinois and that Rocket's illegal acts have adversely affected competition in the Illinois marketplace.

Rocket's argument that CA is not an Illinois consumer and therefore not entitled to protection under the Act is a red-herring.  First, Rocket incorrectly characterizes the Act as protecting only Illinois consumers, relying on the two-page opinion in *Swartz v. Schaub*, 818 F. Supp. 1214 (N.D. Ill. 1993).  To the contrary, the Act expressly protects any person against deceptive business practices and the case law holds that business competitors are protected under the Act.  Second, Rocket's argument fails to acknowledge the majority rule that non-Illinois residents are also protected by the Act.  *Tylka v. Gerber Prods. Co.*, 182 F.R.D. 573, 576 (N.D. Ill. 1998) (expressly rejecting the narrow interpretation of the Act by *Swartz*); *Cirone-Shadow v. Union Nissan*, No. 94 C 6723, 1995 U.S. Dist. LEXIS 5232, at *12-*13 (N.D. Ill. Apr. 19, 1995)

(expressly rejecting *Swartz*); *Fry v. UAL Corp.*, 136 F.R.D. 626, 637 (N.D. Ill. 1991); *Bunting v. Progressive Corp.*, 348 Ill. App. 3d 575, 585-86 (Ill. App. 2004) (refusing to hold that the Act does not apply to non-Illinois residents). Third, although Rocket argues that the "consumer nexus" test should apply where the plaintiff and the defendant are competitors, the cases Rocket cites are distinguishable because they involve consumers, not competitors. *Continental X-Ray v. XRE Corp.*, No. 93 C 3522, 1995 WL 599064 (N.D. Ill. Oct. 2, 1995), involved a dispute between a purchaser and a seller of X-ray tables. *Ivanhoe Fin. Inc. v. Highland Banc Corp.*, No. 03 C 7336, 2004 WL 2091997, at *4-*5 (N.D. Ill. Sept. 15, 2004), like *Continental X-Ray*, also involved a dispute between a seller and a purchaser, as Rocket acknowledges in its brief. (RB 14.)

Although Rocket quotes *Credit Ins. Consultants* to assert that "sharp practices" must be alleged (RB 13), the court there denied the motion to dismiss. *Credit Ins. Consultants*, 210 F. Supp. 2d at 985-86. The "sharp practices" alleged there were nothing more than the allegations here: misrepresentations that the products were originated by the seller but were not. (AC ¶ 70.)

## C.    CA's Unfair Competition Claims Are Not Preempted By The Copyright Act

Rocket is correct that preemption by the Copyright Act requires that (1) the particular work that is the subject of the claim be the type of material protected under the Copyright Act, and (2) the state law claim has no elements in addition to those required for copyright infringement. (RB 15 (*citing Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 305 (2d Cir. 2004), *cert. denied*, 544 U.S. 949 (2005))). But Rocket fails to acknowledge that CA's unfair competition claims concern entirely different subject matter - *e.g.*, CA's entire development environment - which is not the type of material protected by the Copyright Act. (AC ¶¶ 2, 23, 61-68). In addition, Rocket ignores the fact that the unfair competition claims concern the misappropriation of trade secrets in breach of the fiduciary duty of former employees

to keep the confidential information of their former employers confidential (AC ¶¶ 29, 63) - an element not required to prove copyright infringement.

Unfair competition claims are not preempted where they are based on misappropriation of materials that are not the type of materials covered by the Copyright Act. *Chicago Bd. Options Exch.*, No. 06 C 6852, 2007 U.S. Dist. LEXIS 13007, at *13-*15 (N.D. Ill. Feb. 23, 2007). In *Chicago Board*, the court held that unfair competition claims based on the defendant's unauthorized use of confidential research and development to create copyrighted works, and "goodwill, skills, labor, reputation, and necessary expenditures" "do not fall within the subject matter of copyright. . . ." *Id.* at *13. As in *Chicago Board*, the Copyright Act does not preempt the unfair competition claims, because the first element of the test for preemption is not satisfied here: CA's unfair competition claims are based on wholly different materials than are the subject of its copyright claims - *e.g.*, CA's proprietary product development environment - and do not fall within the ambit of the Copyright Act. (AC ¶ 23.) Rocket's motion to dismiss these claims as preempted should fail for this reason alone.

The unfair competition claims are also not preempted for the separate reason that the claims require proof that the former Platinum engineers breached their fiduciary duty to CA to keep its trade secrets confidential, which is not required to prove copyright infringement. *Briarpatch*, 373 F.3d at 305; *Chicago Bd.*, 2007 U.S. Dist. LEXIS 13007, at *13-*15. *Natkin v. Winfrey*, 111 F. Supp. 2d 1003 (N.D. Ill. 2000), relied on by Rocket, is inapplicable to our situation because, there, the same subject matter was at the root of both the copyright infringement and the unfair competition claims, and no confidential information or breach of any fiduciary duty owed by an employee to an employer was involved. *Natkin*, 111 F. Supp. 2d at

1006-09.  Thus, the Copyright Act also does not preempt the unfair competition claims for the separate reason that the second element of the *Briarpatch* test is not satisfied.

## IV.   CA'S REMAINING CLAIMS (COUNTS IV-VII, STATUTORY DAMAGES AND ATTORNEYS' FEES) ARE ALSO TIMELY, WELL-PLEADED AND NOT PREEMPTED

### A.    Counts IV-VII And The Claims For Statutory Damages And Attorneys' Fees Are Timely

None of the claims in Counts IV-VII are time-barred for two separate reasons.  First, as CA has already shown in Sections I.B., II, and III.A. above, Rocket affirmatively concealed its illegal acts preventing CA from discovering that it had these claims, estopping Rocket from now arguing that the statute of limitations bars CA's claims or tolling the applicable statute of limitations.

Second, taking all of the allegations as true and making all reasonable inferences from them in CA's favor, the Amended Complaint establishes that the claims in Counts IV-VII accrued within three years of the filing of this lawsuit.  Here, Rocket correctly acknowledges that New York's timing rules apply to these claims.  (RB 16, 18, 21, 23.)  But Rocket fails to acknowledge that the date when each of its wrongful acts occurred is not established by the date when one or more of the former Platinum engineers stole from CA, or when CA accused Rocket of illicit activity.  *See CSFB Holt*, 2004 WL 1794499, at *8.  In *CSFB Holt*, the court denied a motion to dismiss a conversion claim, holding that the date alleged as to when the plaintiff confronted the defendant does not establish that the claimed conversion occurred on or before that date.  *Id*.

Essential to Rocket's argument is its mischaracterization of the Amended Complaint as alleging only a single wrongful act or injury occurring, of course, more than three years before CA filed suit.  The Amended Complaint alleges much more than that:  it states facts sufficient to

establish that Rocket's illegal acts began in or around 2001, when Rocket first launched a number of DB2 database administration products remarkably similar to CA's, that Rocket concealed its illegal acts from CA, even though they continued through December 2004 when Rocket launched yet another product with features similar to features in a comparable CA product, and that Rocket's illegal acts continue to this day.  (AC ¶¶ 32-45.)  While the Amended Complaint alleges that one or more of the former Platinum engineers stole CA's property before they left CA, this allegation does not establish when Rocket committed its wrongful acts, as in *CSFB Holt*.  Indeed, CA alleges, among other things, that Rocket has infringed more than twenty of its copyrights, and misappropriated various trade secrets at various times, after the former Platinum engineers joined Rocket; CA does not simply allege one illicit act.  (AC ¶ 51.)

In addition, as to the timeliness of the trespass to chattels claim, Rocket relies on a case involving easement rights that were violated by the single act of cutting the plaintiff's railroad tracks more than three years before the plaintiff brought suit.  (RB 18-19 (*citing Cranesville Block Co., Inc. v. Niagara Mohawk Power Corp.*, 175 A.D.2d 444, 446 (N.Y. App. Div. 1991)).  *Cranesville* has no application here because is it involved only a single act, not multiple illegal acts that include the successive use of stolen property to this day.

As to the timeliness of the intentional interference with prospective economic advantage claims, these claims accrued in the last three years because, as Rocket acknowledges, the claims accrue when the injury to CA occurred.  The Amended Complaint alleges this injury is ongoing.  (*See*, *e.g.*, AC 85-90.)

As to the claims for statutory damages and attorneys' fees, Rocket does not cite a single case supporting dismissal here.  *Johnson v. Jones*, 149 F.3d 494 (6th Cir. 1998), affirmed the district court's award of attorneys fees and damages on summary judgment after a full trial of all

of the evidence, not on the pleadings alone, as the Court is asked to do here.  *Johnson*, 140 F.3d at 497.  The court in *Troll Co. v. Uneeda Doll Co.*, 483 F.3d 150 (2d Cir. 2007), decided whether restoration copyrights were available to the plaintiff, not attorneys' fees and statutory damages.  In *EZ-TIXZ, Inc. v. HIT-TIX, Inc.*, 919 F. Supp. 728 (S.D.N.Y. 1996), the court dismissed the plaintiff's claim for attorneys' fees and damages for infringement because no question arose concerning whether the infringing act could have been inferred as occurring after the copyrights were registered because only one product ("the Program") was at issue there.  *EZ-TIXZ*, 919 F. Supp. at 735-36.  Unlike the situation in *EZ-TIXZ*, the Amended Complaint alleges that Rocket infringes a number of copyrights at various times, and to this day (AC ¶ 53), which clearly supports the notion that infringement took place after registration.

Precisely when Rocket committed each and every one of its wrongful acts will be established at trial - in spite of Rocket's wrongful concealment of them to this day.  Nonetheless, the Amended Complaint contains ample facts which directly establish, or from which the Court can reasonably infer, that Rocket's wrongful acts and CA's injuries occurred in the three years since CA brought suit, or, as to the claims for attorneys' fees and statutory damages, after registration of the copyrights.  And Rocket's concealment of the facts giving rise to CA's claims should estop Rocket from raising, or otherwise toll, the statute of limitations.  Thus, none of Counts IV-VII or the claims for statutory damages or attorneys' fees are time-barred.

### B.     Counts IV-VII Are Well-Pleaded

#### 1.     CA's Conversion Claim (Count IV) Is Well-Pleaded

The Amended Complaint sufficiently states a claim for conversion.  Rocket argues that CA's claim for conversion must fail because CA alleges only that Rocket took copies and was not therefore "excluded" from the information contained in them, since CA had the originals.  (RB 17.)  This is legally and factually wrong.  To state a claim for conversion, a pleading need

only allege for the wrongful-taking element that "the defendant wrongfully and without authorization assumed control, dominion, or ownership over the property." *Cirrincione v. Johnson*, 184 Ill. 2d 109, 114 (Ill. 1998); *see In re Cross Media Mktg. Corp.*, No. 06 Civ. 4228, 2006 WL 2337177, at *16 (S.D.N.Y. Aug. 11, 2006). In *Cross*, the court held that conversion occurred where the defendant auctioned copies of the plaintiff's customer lists over the Internet but the true owner still had access to the information in the lists. *In re Cross Media Mktg. Corp.*, No. 06 Civ. 4228, 2006 WL 2337177, at *16. Denial of access to the information was not required in *Cross*. Rocket relies on *Trustforte, Corp. v. Eisen*, No. 600521/2005, 2005 WL 3501587 (N.Y. Sup. Ct. Nov. 15, 2005) but this case is not persuasive because it is a lower court decision with too few facts recited to determine if it applies here.

Even if conversion requires that the plaintiff be excluded from the property, the Amended Complaint sufficiently alleges this. It alleges that laptops and other electronic media, including backup tapes, owned by CA were taken and not returned. (AC ¶¶ 23, 35, 76.) Rocket's use of and failure to return CA's property deprived CA of its rights in it. CA's access to copies containing its copyrighted source code and trade secrets, other than the ones Rocket refuses to return, does not change the fact that Rocket's actions have deprived CA of its access to the copies Rocket still has.

## 2. CA's Trespass to Chattels Claim (Count V) Is Well-Pleaded

The Amended Complaint sufficiently alleges a claim for trespass to chattels. Rocket argues that the Amended Complaint fails to allege specific facts showing actual damages or harm, relying on *In re Jet Blue Airways Corp. Privacy Litig.*, 379 F. Supp. 2d 299 (E.D.N.Y. 2005). (RB 19-20.) But *Jet Blue* is distinguishable. There, the court required actual damages because the property alleged to have been interfered with was intangible property, unlike the laptops and other electronic media, including back-up tapes, alleged to have been interfered with

here.  *Jet Blue*, 379 F. Supp. 2d at 328.  *Jet Blue*, moreover, acknowledged that alleging that the plaintiff was deprived of the use of the data for a "substantial period of time" could satisfy the actual harm requirement there.  *Id*. at 329.  Unlike in *Jet Blue*, CA alleges that tangible property was taken because it alleges that laptops and other electronic media, including back-up tapes, were taken.  (AC ¶¶ 23, 35.)  CA sustained actual harm because it was deprived of use of the items taken by Rocket for a substantial period of time.

### 3.   CA's Intentional Interference With Prospective Economic Advantage Claim (Count VII) Is Well-Pleaded

The Amended Complaint also sufficiently alleges a claim for intentional interference with prospective economic advantage.  Rocket argues that the Amended Complaint fails to state a claim because CA did not specifically identify the third parties that Rocket interfered with, or that a contract would have been entered into with third parties "but for" the interference.  (RB 22-23.)  A pleading need not identify the specific third parties interfered with.  *Shred-It USA, Inc. v. Mobile Data Shred, Inc.*, 202 F. Supp. 2d 228, 237 (S.D.N.Y. 2002).  In *Shred-It*, the court denied a motion to dismiss a claim for intentional interference with prospective business advantage where the plaintiff alleged that the defendants interfered with the plaintiff's "customer relationships," but did not specifically name the customers.  *Id*. at 236-37.  Indeed, *Shred-It* held that the failure to identify specific third parties was "of no consequence."  *Id*.

Rocket relies on *Fuel Digital, Inc. v. Corinella*, No. 602497/06, 2006 WL 4476202 (N.Y. Sup. Ct. Oct. 24, 2006), as requiring that specific third parties be identified.  *Fuel Digital*, 2006 WL 4476202, at *5.  The court there dismissed the claim, not because the plaintiff failed to identify specific third party relationships (specific third parties were alleged), but because the plaintiff failed to allege interference with the third parties, *id*., as Rocket even notes in its brief.  (RB 22.)

Rocket relies on *Brown v. Bethlehem Terrace Assocs.*, 136 A.D.2d 222 (N.Y. App. Div. 1998), as requiring an allegation that a contract would have been entered into "but for" the interference. *Brown*, 136 A.D. 2d at 225. But the court in *Brown* did not grant the plaintiff's motion to dismiss because the defendants' answer failed to allege that but for the interference they would have entered into a contract. The defendants' answer merely alleged that they had "difficulty in securing a favorable mortgage," not that they would have obtained a favorable mortgage had the plaintiff not allegedly interfered with the defendants' relationship with the mortgagor. *Id.* Indeed, a pleading need not allege that "but for" the interference a contract would have been consummated to sufficiently state a claim. *Ivy Mar Co., Inc. v. C.R. Seasons Ltd.*, Case No. 95-CV-0508, 1998 WL 704112, at *16 (E.D.N.Y. Oct. 7, 1998). Despite the fact that the plaintiffs in *Ivy Mar* did not prove that they would have contracted with customers, this Court denied the defendants' motion for summary judgment and held that diverting business from plaintiffs to a defendant was sufficient to state a claim for intentional interference with prospective business advantage because the claim concerns a prospective opportunity, and not a specific contract. *Id.* at *15-*16 (*quoting Hannex Corp. v. GMI, Inc.*, 140 F.3d 194, 205 (2d Cir. 1998)).

Even so, as in *Shred-It* and *Ivy Mar*, CA specifically pleaded that contracts with identifiable third parties would have been consummated but for Rocket's interference. (AC ¶¶ 85-87, 90.)

### C. Counts IV, V and VII Are Not Preempted

The Copyright Act does not preempt the claims, for the reasons set forth in Section III.C. Indeed, the Counts concern entirely different subject matter than the copyright infringement claims, and not the type of property protected, *i.e.,* tangible property, by the Copyright Act. *See* H.R. Report No. 94-1476, at 133 (1976) cited in *Nimmer* §1.01[B][1][i] (2007); *McNabb Bennett*

*& Assocs., Inc. v. Terp Meyers Architects*, 1987 U.S. Dist. LEXIS 1787, at *21 (N.D. Ill. Mar. 10, 1987).  Moreover, the intentional interference with prospective economic advantage claims include the extra element that a prospective relationship with a third party was interfered with.

## CONCLUSION

For the foregoing reasons, Rocket's motion to dismiss each of the claims in the Amended Complaint should be denied in its entirety.

Dated:  December 19, 2007

Respectfully submitted,

KAYE SCHOLER LLP


By:  /s/ Betty A. Ryberg
     Scott G. Lindvall
     Betty A. Ryberg

425 Park Avenue
New York, NY  10022
Tel.:  (212) 836-8000
Fax:  (212) 836-8689

*Attorneys for Plaintiffs CA, Inc., Computer Associates Think, Inc., Platinum Technology International, Inc., and Platinum Technology IP, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I, Howard I. Sherman, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on December 19, 2007:

Date:   December 19, 2007                              /s/Howard I. Sherman

31582837.DOC