UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

CA, INC., COMPUTER ASSOCIATES
THINK, INC., PLATINUM TECHNOLOGY     :
INTERNATIONAL, INC. and PLATINUM
TECHNOLOGY IP, INC.                                   :

                     Plaintiffs,         :     Civil Action No.
                                     07-CV-1476 (ADS) (MLO)

    v.                                                              :

ROCKET SOFTWARE, INC.                         :

                     Defendant.         :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**Rocket's Memorandum Of Law In Support Of Its Motion
In Limine For An Order Setting Forth That Apportionment Is The
Appropriate Method To Calculate Damages Under This Court's Decision In *CA v. Altai***

Rocket respectfully submits this memorandum of law in support of its motion in limine for an Order that apportionment is the appropriate method to calculate damages. That relief is appropriate for these reasons:

1. This Court in CA v. Altai (E.D.N.Y. 1991) held that a copyright-infringement plaintiff may seek only those damages which are causally related to the infringing conduct, and may not seek damages on the "but-for" theory that all of the alleged infringer's profits on the allegedly infringing product are attributable to the purported infringement.

2. Similarly, for a trade secret claim, there must also be a causal relationship between the misappropriation and a calculation of lost profits.

3. Here, CA does not challenge more than 99% of the source code in Rocket's products at issue.

4. Any damages in this case must be calculated on an apportionment approach, as in Altai, and CA cannot attempt -- through experts or otherwise -- to recover damages based upon the theory that Rocket's profits in connection with the software at issue is entirely attributable to the alleged infringement.

1

## STATEMENT OF FACTS

This is an action for copyright infringement and trade secret misappropriation. CA sued Rocket in April 2007, alleging that several Rocket employees, who were formerly employees of CA or its predecessor, Platinum, misappropriated confidential information -- computer source code -- during their tenure at CA. (See Am. Compl. ¶ 35) (Docket No. 3.) Rocket denies CA's allegations and denies that it is liable to CA.

Although CA first learned of the nature of its claims in 2001, when some of its employees noticed purported similarities between Rocket's products and CA's products, it chose not to sue Rocket for six more years. (See Am. Compl.) CA now alleges damages that date back to 1999, the year in which the former CA employees joined Rocket. It alleges damages not only for alleged lost sales relating to the Rocket products involved in this lawsuit, but also for sales of other, unrelated products that CA contends would have been sold had Rocket not misappropriated its information. (Expert Report of John C. Jarosz, submitted on July 30, 2008 ("Jarosz Report") (Declaration of P. Anthony Sammi, executed on February 2, 2009 ("Sammi Decl.") at Exhibit A)).

Yet, of the millions and millions of lines of source code produced by Rocket during this litigation, CA has only challenged a tiny fraction -- less than 1% -- in this litigation. In other words, the overwhelming majority of source code in Rocket's products is not at issue and cannot be causally linked to any significant damages. (Rebuttal Expert Report of Kathleen M. Kedrowski, submitted October 9, 2008 ("Kedrowski Report") ("Sammi Decl., Ex. B) at p. 62.)

## ARGUMENT

### I. ON COPYRIGHT AND TRADE SECRET CLAIMS, THERE MUST BE A DIRECT CAUSAL CONNECTION BETWEEN LOST PROFITS AND A DEFENDANT'S ALLEGED WRONGFUL CONDUCT

Under the Copyright Act, a plaintiff may be entitled to recover actual damages, including lost profits, "suffered by him as a result of the infringement." 17 U.S.C. § 504(b). But under this standard, "damages may be recovered only if there is a necessary, immediate and direct causal connection between the wrongdoing and the damages." Big Seven Music Corp. v. Lennon, 554 F.2d 504, 509 (2d Cir. 1977) (emphasis added). A plaintiff is not entitled to recover lost profits where customers select the defendant's infringing product on the basis of non-infringing factors. In such a case, the requisite causal link between the infringement and the lost profits is absent. See Data Gen. Corp. v. Grumman Sys. Support Corp., 36 F.3d 1147, 1171-72 & n.44-45 (1st Cir. 1994). Factors bearing on whether the causal link exists include, among other things, whether the infringer would not have been in the market but for the infringement; price; customer loyalty; and level of customer satisfaction. See id. at 1172 n.44.

This Court held that a plaintiff must demonstrate a causal link between infringement and lost profits. See Computer Assocs. Int'l, Inc. v. Altai, Inc., 775 F. Supp. 544 (E.D.N.Y. 1991), aff'd in part, vacated in irrelevant part, 982 F.2d 693 (2d Cir. 1992). In Altai, a copyright infringement case concerning computer source code, the plaintiff's damages expert assumed that the plaintiff would have sold its percentage market share of the defendant's infringing sales. CA's expert failed, among other things, to account for the fact that CA's product was priced higher than the infringing product. CA's expert also improperly assumed that the defendant would have marketed no competing product but for the infringement. Id. at 568-69. This Court concluded that the CA's expert "ignore[d] the causation requirement in the statute [17

3

U.S.C. § 504(b)]" requiring that actual damages "be[] suffered by the copyright owner 'as a result of the infringement.'" Id. at 569.

Just as for copyright infringement, the same standard applies for alleged lost profits resulting from trade secret misappropriation. A plaintiff must show that its lost profits are caused by or related to the misappropriation to recover lost profits damages. See, e.g., 765 Ill. Comp. Stat. 1065/4; Do It Best Corp. v. Passport Software, Inc., No. 01-C-7674, 2005 WL 743083, at *16 (N.D. Ill. Mar. 31, 2005).

**II.    CONSEQUENTLY, TO THE EXTENT CA ADDRESSES DAMAGES AT TRIAL, ITS COUNSEL, FACT WITNESSES AND EXPERT WITNESSES MUST DO SO CONSISTENT WITH THE APPORTIONMENT APPROACH SET FORTH IN *ALTAI*__**

Apportionment is the method by which damages are properly attributed only to infringing conduct. Altai, 775 F.Supp. at 569; Orgel v. Clark Boardman Co., 301 F.2d 119, 121 (2d Cir. 1962). The Court stated in Orgel that "where an infringer's profits are not entirely due to the infringement, and the evidence suggests some division which may rationally be used as a springboard it is the duty of the [trier of fact] to make some apportionment." 301 F.2d at 121.

That apportionment analysis involves an examination into the significance or value of the material at issue -- here, computer source code. This Court's decision in Altai is particularly instructive on the apportionment analysis because it involved source code as well. In Altai, liability was found on the copyright claims and the court then considered damages. The Court first examined the significance or value of the infringed material by taking into account its quantitative and qualitative value. The Court determined that approximately 30 percent of the lines of code in the accused product were infringing (qualitative value), and that one-third of the value of the accused product could be attributed to the infringed code (quantitative value). Id. at

4

571-2. The Court then determined that the significance of the program in defendant Altai's products was one-third the value of the product. Therefore, "the infringing portion to be attributed to the end product is one-third times one-third, or one-ninth of the products sold." Id. at 572 (emphasis added.) These fractions were used to calculate plaintiff CA's lost profits and defendant Altai's unjust enrichment. The Court awarded to CA approximately one-ninth of the damages that it sought, and approximately one-third of Altai's profits during the relevant period. Id.

In doing so, the Court identified the fatal defect in CA's damages calculation -- namely, CA ignored the causation requirement in 17 U.S.C. § 504 by failing to apportion damages:

> [CA's expert] seems to ignore the causation requirement in the statute. Actual damages must have been suffered by the copyright owner 'as a result of the infringement.' Similarly, profits of the infringer, to be recoverable, must be 'attributable to the infringement.'

Id. at 569; see also Stevens Linen Assocs., Inc. v. Mastercraft Corp., 656 F.2d 11, 15 (2d Cir. 1981) ("the object of the damages inquiry is to determine what sales probably would have been made without the infringement"). The Court therefore affirmed the statutory requirement that damages must be attributable to the actual infringement. It rejected CA's argument that the infringing source code was "essential" and that without it, no sales would have been made at all:

> A sounder approach would be to allocate a fair proportion of the profit on a particular sale to the presence of the infringing [code]… This is particularly appropriate in the context of this case because with most customers, the presence of [the infringing code] was not a factor in their decision to purchase.

Altai at 570. CA ignored, for example, the fact that the infringed component had "relatively little sales appeal for customers" and that "customers are totally unaware of its presence." Id. at 569. Furthermore, CA could not attribute any lost sales to the presence of the infringing material. Id. at 570.

5

The apportionment analysis used in Altai governs here as well.  Only a tiny fraction of source code in the Rocket products is alleged to infringe.  For example, the source code that is accused of literal infringement makes up less than one-fourth of one percent of the source code in all of CA's products that compete with the accused products.  (Rebuttal Expert Report of Kathleen M. Kedrowski, submitted October 9, 2008 ("Kedrowski Report") (Sammi Decl., Ex. B) at p. 62.)  In other words, more than 99.8% of the lines of source code here is not the subject of CA's literal infringement claim.  (Kedrowski Report at p. 63.)  Although the Court in Altai made clear that the "significance or the value of the copied material is not necessarily measured by counting lines of code," this at least provides a starting point for the apportionment analysis.  Id. at 571-572 (emphasis added).

Consequently, at trial, CA's argument, fact witness and expert witness testimony concerning damages must be premised on and consistent with the apportionment approach set forth in Altai.  Among other things, CA cannot premise any damages claim or calculation on the rejected theory that Rocket would have made no sales or profits but for the infringing product.

## **CONCLUSION**

For the foregoing reasons, Rocket respectfully requests that this court grant this motion in limine, and order that the apportionment approach set forth in Altai governs any calculation of damages in this case, and governs all related argument and testimony at trial.

Dated: February 2, 2009	Respectfully submitted,
      New York, New York

                                               /s/ P. Anthony Sammi
                                               Thomas J. Dougherty
                                               Edward V. Filardi
                                               P. Anthony Sammi
                                               Christopher A. Lisy
                                               SKADDEN, ARPS, SLATE,
                                                    MEAGHER & FLOM LLP
                                               Four Times Square
                                               New York, New York  10036
                                               (212) 735-3000
                                               psammi@skadden.com

                                                 -- and --

                                             One Beacon Street
                                             Boston, Massachusetts 02108
                                             (617) 573-4800

                                             Counsel for Defendant
                                             Rocket Software, Inc.

# **CERTIFICATE OF SERVICE**

       I, P. Anthony Sammi, hereby certify that on February 2, 2009, I caused a true and correct copy of the foregoing document to be served upon the following counsel for plaintiffs by the means of service so indicated:

| | |
|---|---|
| Scott G. Lindvall | By ECF and Hand Delivery |
| Robert Laurenzi | By ECF |
| Paul Margulies | By ECF |
| KAYE SCHOLER LLP | |
| 425 Park Avenue | |
| New York, New York 10022 | |
| | |
| David B. Tulchin | By ECF and Hand Delivery |
| Jordan T. Razza | By ECF |
| Matthew J. Porpora | By ECF |
| SULLIVAN & CROMWELL LLP | |
| 125 Broad Street | |
| New York, New York 10004 | |
| | |
| Gary R. Brown | By ECF |
| CA, INC. | |
| One CA Plaza | |
| Islandia, New York 11749 | |

Dated: February 2, 2009                                          /s/ P. Anthony Sammi
                                                                                    P. Anthony Sammi