IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
CA, INC., COMPUTER ASSOCIATES  :
THINK, INC., PLATINUM
TECHNOLOGY INTERNATIONAL,  :
INC., and PLATINUM TECHNOLOGY IP,
INC.,  :

                    *Plaintiffs*,  :   Civil Action No.: 07-CV-1476 (ADS) (MLO)

                    v.  :

ROCKET SOFTWARE, INC.,  :

                  *Defendant*.
                                         :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  x

**PLAINTIFFS' DETAILED STATEMENT
REGARDING DAMAGES AND OTHER RELIEF SOUGHT**

                      David B. Tulchin
                      Jordan T. Razza
                      SULLIVAN & CROMWELL LLP
                      125 Broad Street
                      New York, New York  10004-2498
                      Tel:  (212) 558-4000
                      Fax:  (212) 558-3588

                      Scott G. Lindvall
                      KAYE SCHOLER LLP
                      425 Park Avenue
                      New York, New York  10022-3598
                      Tel:  (212) 836-8000
                      Fax:  (212) 836-8689

                      Counsel for Plaintiffs CA, Inc.,
                      Computer Associates Think, Inc.,
                      Platinum Technology International, Inc.,
                      and Platinum Technology IP, Inc.

February 4, 2009

Pursuant to Rule (V)(B)(b) of the Individual Motion Practices of the Honorable Judge Arthur D. Spatt, Plaintiffs, CA, Inc., Computer Associates, Think Inc., Platinum Technology International, Inc. and Platinum Technology IP, Inc. (hereafter "CA") submit this statement of damages and other relief sought by CA in this action.

1. CA seeks compensatory damages from defendant Rocket Software, Inc. ("Rocket") under claims of copyright infringement (under 17 U.S.C. §§ 101, *et seq.*, 504), trade secret misappropriation (under the Illinois Trade Secrets Act, 765 I.L.C.S. §§ 1065/2(d), 1065/4(b), 1065/5 and/or New York common law governing trade secrets) and unjust enrichment. CA also seeks an appropriate award of punitive damages for Rocket's intentional and/or reckless misconduct. CA further seeks an order from the Court permanently enjoining Rocket from continuing its illegal activities (under 17 U.S.C. § 502 and the Court's inherent equitable powers).

2. CA and Rocket each develop database administration software products known as DB2 tools ("DB2 tools"). CA sells its DB2 tools to customers for use in managing large databases of information. The DB2 tools that Rocket develops are also sold to customers for use in managing large databases of information, but Rocket does not sell its products directly to customers. Rather, Rocket licenses its products to IBM Corporation ("IBM"), which in turn markets and sells Rocket's DB2 products to customers under IBM's label.

3. CA's DB2 tools compete directly against Rocket/IBM's DB2 tools.

4. To hasten its development of DB2 tools for IBM, and for other reasons, Rocket knowingly and intentionally stole CA's copyrighted source code for use in Rocket's DB2 tools. Rocket then used this purloined source code to develop its own DB2 tools, which were subsequently marketed and sold to customers by IBM. In fact, the products containing the stolen source code are sold by IBM to customers in direct competition with CA's own products. This

means that CA has been forced to compete against its own technologies and, further, that this wrongful competition has come from IBM (probably the strongest "brand name" in the industry). This has severely injured CA.

5. Rocket's theft and misappropriation began in 1999 and software products containing the wrongfully acquired source code continue to be sold in the market to the present day. A number of DB2 tools developed by Rocket and sold by IBM to customers contain stolen and misappropriated source code belonging to CA.

6. Rocket's theft and misappropriation of CA's copyrighted source code and trade secrets was perpetrated by, among other things, luring programmers and software developers formerly employed by CA and/or its subsidiaries Platinum Technology International, Inc. and Platinum Technology IP, Inc. to work for Rocket by granting these developers extraordinary uncapped royalty agreements for up to ten percent of revenues gained from sales of DB2 tools, including revenues gained from sales of DB2 tools which these developers claim to have had no part in developing. Three of these developers have received, in addition to their normal salary and other compensation, more than $2 million each in royalties attributed to products containing stolen source code. This arrangement between Rocket and these developers provided an incentive to use property wrongfully taken from CA. Rocket was fully aware of, and exploited, these circumstances.

7. Rocket's misappropriation also allowed Rocket to develop its DB2 tools quickly and inexpensively, thereby meeting the demands of IBM and winning IBM long-term contracts with customers at the expense of its competitor CA. Indeed, the products containing the stolen code have been sold by IBM for more than eight years. IBM has used these products as part of its effort to "target CA" and to attempt to "kill, not wound" it. IBM has taken hundreds of customers from CA in this process, and has gained direct and indirect revenues from the Rocket-

developed software of more than $1 billion.  This wrongful conduct, using CA's stolen property to compete against CA, has caused severe injury to CA.

8. The source code stolen by Rocket is protected by the following valid copyrights, which are owned by CA:  Copyright Registration Nos. TX 6-536-308, TX 6-540-750, TX 6-540-751, TX 6-540-752, TX 6-540-753, TX 6-540-754, TX 6-540-755, TX 6-540-756, TX 6-540-757, TX 6-540-758, TX 6-540-759, TX 6-540-760, TX 6-540-761, TX 6-540-962, TX 6-540-963, TX 6-554-972, TX 6-554-973, TX 6-554-974, TX 6-554-975, TX 6-554-976, TX 6-554-977, TX 6-554-978 and TX 6-554-979.  These copyrights are protected under 17 U.S.C. §§ 101 *et seq.*

9. All versions of the source code for CA's DB2 products, including the overall architecture and function of the source code and its individual modules and their function, product documentation, and procedures for building source code and executables and installing them at customer sites, and any and all copies, paper and electronically-stored, of the same are CA's proprietary trade secrets within the meaning of, among other statutes, the Illinois Trade Secrets Act, 765 I.L.C.S. § 1065/2(d).

10. The Rocket products that infringe CA's copyrighted DB2 source code and misappropriate its trade secrets include:  Query Monitor, Log Analysis Tool, Object Restore, Archive Log Accelerator, Automation Tool and Change Accumulation Tool.  Rocket's wrongful conduct has made it enormously profitable.  Using the stolen source code, Rocket has licensed to IBM, continuously over more than eight years, a line of DB2 tools.  Rocket's revenues attributable to its line of DB2 tools that include the products containing source code stolen from CA amount to hundreds of millions of dollars during those eight years.  This enormous revenue for Rocket has made the company successful, and enabled it to make significant acquisitions of

other companies. The wrongfully obtained Rocket revenue has also made its principals wealthy. All of this has severely injured CA.

11. When confronted by CA, Rocket intentionally made false and misleading statements in an attempt to thwart CA's efforts to uncover its fraudulent practices. Rocket deceived CA by, more than once, assuring CA that it had made "investigations" of the allegations that its products contained source code that had been wrongfully taken from CA, and by telling CA that its investigations had revealed that there had been no wrongful conduct. The investigations were shams, and Rocket's denials not only deceived CA, but were either knowingly false or recklessly made. In fact, the investigations were structured in such a way to avoid revealing what should have been the easily-discoverable facts. Rocket's two principals, who have become wealthy as a result of the wrongful conduct, never knew -- because they never sought to know -- what the investigations had revealed. They did know, however, that the investigations were performed in a manner that was designed to obscure the truth. As a result, and over a period of many years, Rocket has netted many millions of dollars distributing products which infringe CA's copyrights and constitute misappropriation of CA's trade secrets in violation of federal and state law. All of this has severely injured CA.

12. Only very recently, after irrefutable evidence of outright theft surfaced during discovery in this case, has Rocket acknowledged its theft.

13. The damages that CA has suffered as a result of Rocket's actions may be quantified as follows:

> A. **Lost Profits**, i.e., the additional sales of DB2 tools and corresponding profit that CA would have made had Rocket not engaged in copyright infringement and misappropriation of CA's trade secrets. CA seeks damages of **$274.4 million** from Rocket based on lost profits;
>
> B. **Price Erosion**, i.e., profits that CA has lost as a result of Rocket/IBM's presence in the market for DB2 tools and CA's resulting need to sell its DB2 tools at a lower price to remain price-competitive in the DB2 market. CA seeks

damages of **$198.8 million** from Rocket resulting from price erosion caused by Rocket/IBM's presence in the DB2 market; or

C.     **Unjust Enrichment**, i.e., the disgorgement of Rocket's ill-gotten gains in the form of the profits Rocket has earned from its development of DB2 tools for IBM.  CA seeks disgorgement of **$182.5 million** from Rocket representing Rocket's gross margin on its sales of DB2 Tools to IBM.

14.     Further, CA seeks punitive damages as a result of Rocket's willful and deliberate act of stealing and misappropriating CA's valuable trade secret information.  CA will ask the jury to award **$200 million** in punitive damages.

15.     CA also seeks prejudgment interest on (a) lost profits damages (**$28.9 million**), (b) price erosion damages (**$21.6 million**) and (c) on Rocket's revenues subject to disgorgement by unjust enrichment of Rocket's gross margins (**$19 million**).

16.     CA also seeks a permanent injunction requiring Rocket to cease its continued copyright infringement and trade secret misappropriation.

Dated:  February 4, 2009
       New York, New York

Respectfully submitted,

/s/ Scott Lindvall
Scott G. Lindvall
KAYE SCHOLER LLP
425 Park Avenue
New York, NY  10022
Tel.:  (212) 836-8000
Fax:  (212) 836-8689

/s/ David B. Tulchin
David B. Tulchin
Jordan T. Razza
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York  10004-2498
Tel.:  (212) 558-4000
Fax:  (212) 558-3588

*Counsel for Plaintiffs CA, Inc., Computer Associates Think, Inc., Platinum Technology International, Inc., and Platinum Technology IP, Inc.*

## **CERTIFICATE OF SERVICE**

I, Jordan T. Razza, hereby certify that on February 4, 2009, copies of Plaintiffs' Detailed Statement Regarding Damages and Other Relief Sought were served on the following counsel by the means of service so indicated:

| | |
|---|---|
| Edward Filardi | By E-Mail |
| P. Anthony Sammi | By E-Mail |
| SKADDEN, ARPS, SLATE, MEAGHER & FLOM | |
| Four Times Square | |
| New York, NY 10036 | |
| | |
| Thomas Dougherty | By E-Mail |
| Christopher A. Lisy | By E-Mail |
| SKADDEN, ARPS, SLATE, MEAGHER & FLOM | |
| One Beacon Street | |
| Boston, MA 02108 | |

Dated: February 4, 2009                              /s/ Jordan T. Razza
                                                                  Jordan T. Razza